**STATE of Utah, Plaintiff and Appellee,**

v.

**James F. GARDNER, Defendant and Appellant.**

No. 900379–CA.

Court of Appeals of Utah.

March 18, 1992.

James F. Gardner, Draper, pro se.

R. Paul Van Dam and J. Kevin Murphy, Salt Lake City, for plaintiff and appellee.

Before BENCH, BILLINGS and RUSSON, JJ.

## OPINION

BENCH, Presiding Judge:

James F. Gardner appeals his conviction of a single count of forgery on jurisdictional grounds. We affirm.

## FACTS

On August 14, 1985, Gardner was convicted in state court of forgery, a second degree felony in violation of Utah Code Ann. § 76–6–501(3)(b) (1990). The evidence before the trial court indicated that Gardner negotiated a check belonging to his brother-in-law to Rebecca Neary in Roosevelt, Utah.[1] Gardner was sentenced to serve from one to fifteen years at the Utah State Prison.

Almost four years later, Gardner petitioned the trial court for post conviction relief, seeking resentencing nunc pro tunc to allow him to take a direct appeal. Gardner alleged that he instructed trial counsel

---

1. For purposes of this opinion, we assume that Roosevelt lies within the boundaries of the Uintah and Ouray Indian Reservation. *See Ute Indian Tribe v. State of Utah,* 521 F.Supp. 1072, 1188 (D.Utah 1981). *See also State v. Hagen,* 802 P.2d 745, 746 (Utah App.1990), *cert. granted,* 815 P.2d 241 (Utah 1991).

to appeal the forgery conviction and believed an appeal had been taken, but that trial counsel had failed to comply with his request. The trial court found the allegations to be true, and resentenced Gardner in accordance with *State v. Johnson*, 635 P.2d 36, 38 (Utah 1981).

Now on appeal, Gardner alleges that the trial court lacked jurisdiction over him due to his Indian status. As an addendum to his appellate brief, Gardner includes a personal affidavit in support of his claimed Indian status.[2] The affidavit states that Gardner's paternal and maternal grandfathers were "full-blooded" Ute Indians;[3] that both his mother and his maternal grandmother were enrolled as members of the Uintah band of the Ute tribe until their status was terminated in 1954; that his father is eligible for enrollment with the Uncompahgre Band of the Ute tribe in Colorado; that Gardner is associated with the Uintah Band of the Affiliated Ute Citizens; that Gardner is a second generation "terminated Ute";. that Gardner was raised, educated, and employed on the reservation; that Gardner practices Indian religion by participation in Indian ceremonies and culture; and that Gardner is known as an Indian rights activist.

## JURISDICTION

Gardner alleges that the district court lacked jurisdiction over him due to his claimed Indian status. "It has long been held that exclusive federal criminal jurisdiction over Indians in 'Indian country' includes all persons found to be 'Indian' under federal law...." *Ute Indian Tribe v. State of Utah*, 521 F.Supp. 1072, 1078 n. 14 (1981) (citations omitted); *see also* 18 U.S.C. §§ 1152–1153 (1984).

Between 1954 and 1956, Congress carved out certain exceptions to exclusive federal supervision over Indian property and persons. *See* 25 U.S.C. §§ 450–1300. *See also Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 133, 92 S.Ct. 1456, 1462, 31 L.Ed.2d 741 (1972). Under 25 U.S.C. § 677, Congress terminated federal supervision over trust property of the Ute Indian Tribe on the Uintah and Ouray Reservation, and ordered the partition and distribution of tribal assets between "mixed-blood" and "full-blood" members. As part of that partition and distribution, Congress terminated exclusive federal supervision over "mixed-blood" Utes under 25 U.S.C. § 677v, which states, in relevant portion, as follows:

All statutes of the United States which affect Indians because of their status as Indians shall no longer be applicable to such member over which supervision has been terminated, and the laws of the several States shall apply to such member in the same manner as they apply to other citizens within their jurisdiction.

By terminating federal control over "mixed-blood" Utes, Congress expressly transferred jurisdiction over them to state courts.

▪▪▪ The challenge to jurisdiction based on Indian status could conceivably present a question of fact that would require remand for an evidentiary hearing. In the present case, however, remand is unnecessary because Gardner has not asserted facts sufficient to challenge the jurisdiction of the trial court. Gardner asserts that he is a "terminated Ute." The term "terminated Ute" is synonymous with "mixed-blood" Ute as used in 25 U.S.C. 677v. *See Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 92 S.Ct. 1456, 1463, 31 L.Ed.2d 741 (1972). Gardner further asserts that he is associated with the Affiliated Ute Citizens, an unincorporated association of "mixed-blood" Utes or-

**2.** It is well settled that we do not review evidence presented for the first time on appeal. *Munns v. Munns*, 790 P.2d 116, 119 (Utah App. 1990). We therefore do not consider Gardner's affidavit as proof of the facts alleged therein.

**3.** 25 U.S.C. § 677a defines a "full-blood" Ute as "a member of the tribe who possesses one-half degree of Ute Indian blood and a total of Indian blood in excess of one-half, excepting those who become mixed-bloods by choice...." A "mixed-blood" Ute, by comparison, is defined as "a member of the tribe who does not possess sufficient Indian or Ute Indian blood to fall within the full-blood class as herein defined, and those who become mixed-bloods by choice under the provisions of section 677c of this title." *Id.*

ganized pursuant to 25 U.S.C. 677e. *Id.* Therefore, even if we take as true the representations proffered in Gardner's affidavit, the trial court had jurisdiction over Gardner because exclusive federal jurisdiction over "mixed-blood" Utes has been terminated.

## CONCLUSION

Gardner failed to present facts sufficient to raise a jurisdictional challenge. We therefore affirm his conviction.

BILLINGS and RUSSON, JJ., concur.