25 F.3d 1056
NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Edson G. GARDNER, Lynda M. Kozlowicz, Plaintiffs-Appellants,
v.
UNITED STATES of America; Bruce Babbitt, Secretary of the
United States Department of the Interior; Perry Baker, BIA,
Superintendent of the Uintah and Ouray agency on the Uintah
and Ouray Reservation; Kenneth Blackbird, BIA Officer;
Minnie Grant, BIA Officer; Felicia Pike, BIA Officer;
Uintah County Sheriff's Department; Doreen Dirzuweit,
individually and in official capacity as Uintah County
Officer; Duchesne County; Roosevelt City; State of Utah;
Paul Van Dam, Attorney General; Harry Souvall, Uintah
County Attorney; LyOYD Meacham, Uintah County Sheriff's
Department; State Tax Commission of Utah, in Roosevelt
City, in Duchesne County, State of Utah, Defendants-Appellees.
 No. 93-4102.
 United States Court of Appeals, Tenth Circuit.
 May 5, 1994.
 ORDER AND JUDGMENT[1]
 
 1
 Before BALDOCK and McKAY, Circuit Judges, and BROWN,** District Judge.
 
 
 2
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 3
 Following plaintiff Edson G. Gardner's arrest on the Uintah and Ouray Indian Reservation (reservation), he and plaintiff Lynda M. Kozlowicz commenced an action against various city, county, state, and federal officials and entities seeking declaratory and injunctive relief and damages. They appeal from the district court's order dismissing their complaint, arguing that the State of Utah lacked jurisdiction over Gardner for crimes committed on the reservation because he is an Indian. We affirm.
 
 
 4
 The complaint[2] alleges that plaintiff Kozlowicz is a member of the Ute Indian Tribe (tribe) residing within the exterior boundaries of the reservation. Plaintiff Gardner is a member of the Uintah mixed-blood descendants of the tribe residing within the exterior boundaries of the reservation. On January 13, 1992, while Gardner was driving from Roosevelt, Utah, to Fort Duchesne, Utah, BIA officer Kenneth Blackbird stopped him for speeding. Upon the discovery that his registration was expired and that he did not have a valid driver's license, Gardner became very loud and abusive. Blackbird then took him into custody. Defendants Minnie Grant and Felicia Pike, also BIA officers, were present during the arrest.
 
 
 5
 The officers took Gardner to the tribal jail, where he was held for about thirty minutes. After discovering that Gardner was not a tribal member, they requested that the county take him into custody and file charges against him. Uintah County took Gardner into custody, jailed him and charged him with four state misdemeanors. Gardner was convicted of the four state charges on August 5, 1992, without notice or an evidentiary hearing to determine his Indian status.
 
 
 6
 The complaint challenges Gardner's arrest as having been effected without jurisdiction, and requests a declaratory judgment, relief in the nature of mandamus compelling defendants to "restore" the benefits of Indian jurisdiction to plaintiffs, and damages.
 
 
 7
 Several defendants moved to dismiss under Fed.R.Civ.P. 12(b). The matter was referred to a magistrate judge pursuant to 28 U.S.C. 636(b)(1)(B). He issued a report and recommendation concluding that 1) the Eleventh Amendment bars the action against the State of Utah and the Utah State Tax Commission, and bars the action for damages against defendant Van Dam, in his official capacity; 2) the complaint fails to allege that Van Dam, in his individual capacity, had any connection with the facts of which plaintiffs complain; 3) the complaint fails to allege that defendant Duchesne County Attorney Herbert Gillespie was connected to the facts of which plaintiffs complain; 4) the complaint fails to allege facts to support a claim for relief on behalf of Kozlowicz against the county defendants; 5) Gardner, as a terminated mixed-blood Ute, was subject to state criminal jurisdiction and thus has no arguable basis for relief against the remaining county defendants; 6) the county defendants cannot restore Gardner's Indian status; 7) the complaint fails to allege that Roosevelt, Utah, had a role in the facts of which plaintiffs complain; 8) sovereign immunity bars the claims against the United States and Manuel Lujan, Jr.[3] and Perry Baker, in their official capacities; 9) there are no allegations indicating that defendants Lujan or Baker were sued in their individual capacities or that they were connected to the alleged violations; and 10) defendants BIA officers Blackbird, Pike, and Grant had authority to arrest Gardner and turn him over to the proper authorities. The magistrate judge recommended that the court grant the motions to dismiss of the state, county, and city defendants, and that the complaint against the remaining defendants be dismissed as frivolous under 28 U.S.C.1915(d). The district court adopted the recommendation.
 
 
 8
 A complaint may be dismissed under Rule 12(b)(6) for failure to state a claim if, assuming all of the factual allegations are true and construing them in the light most favorable to the defendant, " 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " Hall v. Bellmon, 935 F.2d 1106, 1109 (10th Cir. 1991)(quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). We review de novo the question of the sufficiency of a complaint. Dunn v. White, 880 F.2d 1188, 1190 (10th Cir.1989), cert. denied, 493 U.S. 1059 (1990).
 
 
 9
 An in forma pauperis complaint[4] may be dismissed under 1915(d) if it is based on an "indisputably meritless legal theory." Neitzke v. Williams, 490 U.S. 319, 327 (1989). We review a 1915(d) dismissal for abuse of discretion. Denton v. Hernandez, 112 S.Ct. 1728, 1734 (1992).
 
 
 10
 The complaint failed to allege any facts in support of
 
 
 11
 Kozlowicz's claims for relief. Our obligation to construe
 
 
 12
 pro se pleadings liberally, Haines v. Kerner, 404 U.S. 519,
 
 
 13
 520-21 (1972), does not require that we relieve a pro se
 
 
 14
 plaintiff of "the burden of alleging sufficient facts on
 
 
 15
 which a recognized legal claim could be based." Hall, 935
 
 
 16
 F.2d at 1110. Even giving Kozlowicz's submissions before
 
 
 17
 the district court a liberal construction, she has failed to
 
 
 18
 adequately allege that she owned the car in question at the
 
 
 19
 time it was confiscated. We therefore uphold dismissal of
 
 
 20
 her claims.[5]
 
 
 21
 We agree in large part with the district court's reasons for dismissing Gardner's claims against the state defendants, Herbert Gillespie, Roosevelt, the United States, Bruce Babbitt, and Perry Baker, but add the following comments. Defendant Van Dam, sued in his official capacity as Attorney General, is not entitled to Eleventh Amendment immunity from claims for prospective injunctive relief. Kentucky v. Graham, 473 U.S. 159, 167 n. 14 (1985). Likewise, Babbitt and Baker, in their official capacities, are not immune from claims for nonmonetary relief. See Carpet, Linoleum & Resilient Tile Layers, Local Union No. 419 v. Brown, 656 F.2d 564, 567 (10th Cir.1981).
 
 
 22
 Gardner sought a judgment declaring that he is entitled to an opportunity to contest any decision depriving him of "Indian jurisdiction." This request apparently refers to the state court's failure to afford Gardner an evidentiary hearing to determine his Indian status before finding him guilty of the state charges. It is unclear whether this relief is requested as to Van Dam, Babbitt, or Baker, or all three.
 
 
 23
 To maintain a declaratory action to prevent recurrence of a past constitutional injury, a party must demonstrate a good chance of the same injury occurring in the future. Facio v. Jones, 929 F.2d 541, 544 (10th Cir.1991). Since we determine Gardner's Indian status in this appeal, future deprivations of a hearing to determine his status will cause him no constitutional injury. His action for declaratory relief therefore is without merit.
 
 
 24
 Gardner also sought an order in the nature of mandamus to restore the benefits of Indian jurisdiction to him. We agree with the district court that Gardner's Indian status is a matter for Congress, not the defendants, to decide.
 
 
 25
 The claims against the remaining county defendants are premised on the notion that the State of Utah lacks jurisdiction over Indians for crimes committed on the reservation. The State of Utah does not have jurisdiction over crimes committed by Indians in Indian Country. Hagen v. Utah, 114 S.Ct. 958, 964 (1994). However, states do have jurisdiction in Indian country over crimes committed by non-Indians against non-Indians, as well as over victimless crimes committed by non-Indians. Solem v. Bartlett, 465 U.S. 463, 465 n. 2 (1984); Ross v. Neff, 905 F.2d 1349, 1353 (10th Cir.1990).
 
 
 26
 We accept as true the allegations that Gardner's arrest occurred within the reservation,[6] and that he is a descendant of a terminated mixed-blood Ute. The pertinent inquiry is whether this status subjects him to Utah's criminal jurisdiction.
 
 
 27
 Where a termination act such as 25 U.S.C. 677-677aa (the Act) ended the federal trust relationship with an Indian and exposed him to state law, he is subject to state criminal jurisdiction, unless his victim was an Indian. See St. Cloud v. United States, 702 F.Supp. 1456, 1466 (D. S.D.1988). See also United States v. Antelope, 430 U.S. 641, 647 n. 7 (1977)(noting that members of tribes whose official status has been terminated by Congress no longer subject to federal criminal jurisdiction); United States v. Heath, 509 F.2d 16, 19 (9th Cir.1974)(same). The Utah Court of Appeals has held that the State of Utah has jurisdiction over a terminated mixed-blood Ute for crimes committed on the reservation. State v. Gardner, 827 P.2d 980, 981-82 (Utah Ct.App.), cert. denied, 836 P.2d 1383 (Utah 1992).
 
 
 28
 Gardner contends that while the Act terminated federal supervision over certain mixed-blood Utes, it did not expressly terminate supervision over the descendants of these individuals. The Act divided the tribe into two groups, the mixed-bloods and the full-bloods. It called for the tribe to prepare and submit to the Secretary of the Interior a roll of mixed-blood and full-blood members of the tribe living on August 27, 1954. 677g. The Secretary was directed to publish the rolls in the federal register. Id. Within sixty days of the publication of the final membership roll, the two groups were to commence a division of tribal assets susceptible to equitable and practicable distribution. 677i. After the mixed-blood members received their shares of these assets and any other property to which they were entitled, "[f]ederal supervision of such member and his property shall thereby be terminated." 677o(a).
 
 
 29
 Upon removal of federal restrictions on each individual mixed-blood member's property, the Act directed the Secretary to publish in the Federal Register a proclamation declaring that the federal trust relationship to such individual was terminated. This proclamation was published on August 27, 1961. Section 677v further provided that
 
 
 30
 [t]hereafter, such individual shall not be entitled to any of the services performed for Indians because of his status as an Indian. All statutes of the United States which affect Indians because of their status as Indians shall no longer be applicable to such member over which supervision has been terminated, and the laws of the several States shall apply to such member in the same manner as they apply to other citizens within their jurisdiction.
 
 
 31
 Section 677v does not expressly provide that federal supervision over descendants of terminated mixed-blood Utes is terminated. Our examination of the intent of the Act, as well as some of its other provisions, however, convinces us that this was the congressional intent.
 
 
 32
 The Act was part of a policy initiated in the 1950s by the federal government "to terminate its supervisory responsibilities for Indian tribes." South Carolina v. Catawba Indian Tribe, Inc., 476 U.S. 498, 503 (1986). Passage of House Concurrent Resolution 108 marked the beginning of this policy. Id. This resolution stated,
 
 
 33
 "it is the policy of Congress, as rapidly as possible, to make the Indians within the territorial limits of the United States subject to the same laws and entitled to the same privileges and responsibilities as are applicable to other citizens of the United States, to end their status as wards of the United States, and to grant them all of the rights and prerogatives pertaining to American citizenship."
 
 
 34
 Id. at 503 n. 10 (quoting H.R. Con. Res. 108, 83d Cong., 1st Sess. (1953), 67 Stat. B132). We can discern no reason why Congress would have intended that this policy apply only to Indians who were living as of August 27, 1954, but not to their descendants.
 
 
 35
 Further, the Act provided that effective upon publication of the final rolls, "the tribe shall thereafter consist exclusively of full-blood members. Mixed-blood members shall have no interest therein except as otherwise provided in this subchapter. New membership in the tribe shall thereafter be controlled and determined by the constitution and bylaws of the tribe and ordinances enacted thereunder." 677d. This section was interpreted to mean that mixed-blood descendants can no longer become members of the tribe under its constitution. Chapoose v. Clark, 607 F.Supp. 1027, 1036-37 (D. Utah 1985). Nor are mixed-blood descendants a federally recognized tribe of their own. See 58 Fed.Reg. 54,364 (1993).
 
 
 36
 Finally, 677q provides that once federal supervision is terminated, state law regarding probate, heirship, and administration of estates shall apply to the individual trust property of mixed-blood members. It is unlikely that Congress intended for the property of the descendants of terminated mixed-bloods to be controlled by state law if these persons were subject to federal supervision.
 
 
 37
 Menominee Tribe of Indians v. United States, 391 U.S. 404 (1968), relied on by plaintiffs, does not lend support to their cause. Menominee Tribe held that an act which terminated federal supervision of the Menominee Tribe did not nullify the tribe's treaty rights to hunt and fish on the reservation free from state regulation where the intent to abrogate those rights was not explicitly stated. Id. at 412-13. As the present case does not involve any treaty-based hunting and fishing rights of Gardner, Menominee Tribe is of limited assistance.
 
 
 38
 To the extent that plaintiffs rely on Menominee Tribe for the proposition that Gardner's Indian status cannot be abrogated absent an explicit statement, we reject that claim. While doubtful expressions of legislative intent should be resolved in favor of Indians, this canon of construction should not be applied to defeat clearly expressed congressional intent. Catawba Indian Tribe, 476 U.S. at 506. We conclude that Congress's clearly expressed intent was to terminate federal supervision of all mixed-blood Utes.
 
 
 39
 Plaintiffs argue that the tribe's lack of consent to the state's assumption of jurisdiction pursuant to Utah Code Ann. 9-9-201 to 9-9-204 precludes the state from exercising jurisdiction over Gardner for crimes committed on the reservation. We disagree. Section 9-9-201 authorizes the State of Utah to assume criminal jurisdiction over Indians and Indian country in accordance with the consent given by Public Law 90-284, 82 Stat. 78-80, to the extent authorized. Section 401(a) of Public Law 90-284, codified at 25 U.S.C. 1321(a), gives the consent of the United States to states not having jurisdiction over criminal offenses committed by or against Indians in Indian country situated within such states to assume, with the consent of the affected Indian tribe, jurisdiction of such offenses committed within Indian country to the same extent the state has jurisdiction over such offenses committed elsewhere within the state. This legislation, affecting only offenses committed by or against Indians in Indian country, has no application to Gardner.
 
 
 40
 Gardner's claim against the BIA officers appears premised on his contention that these officers lacked authority to arrest him because they were not "cross-deputized." Tribal officers have authority to detain an offender on a reservation and transport him to the proper authorities. Duro v. Reina, 495 U.S. 676, 697 (1990). The complaint alleged that after the BIA officers became aware of Gardner's status, they transported him to the county authorities. Thus, this claim lacks arguable merit.
 
 
 41
 Plaintiffs' motions for a preliminary injunction and plaintiff Gardner's motion for an injunction are DENIED.[7] Plaintiffs' motion for contempt is DENIED. The motion for leave to file an amicus brief is DENIED as untimely.[8]
 
 
 42
 The judgment of the United States District Court for the District of Utah is AFFIRMED. The mandate shall issue forthwith.
 
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470
 
 
 **
 Honorable Wesley E. Brown, Senior District Judge, United States District Court for the District of Kansas, sitting by designation
 
 
 [2]
 The district court assumed that plaintiffs' document entitled "To Amend Petition, Affidavit, and Complaint," R. Vol. 1, doc. 5, was their complaint. They have not challenged this assumption. We therefore rely on this document as their complaint
 
 
 [3]
 Counsel for the federal defendants have informed the court that Bruce Babbitt, current Secretary of the Interior, should be substituted for Manuel Lujan pursuant to Fed.R.App.P. 43(c)(1)
 
 
 [4]
 Only Gardner was permitted to proceed in forma pauperis in the district court
 
 
 [5]
 We do not address Kozlowicz's arguments concerning the conflict between State v. Perank, 858 P.2d 927 (Utah 1992), and Ute Indian Tribe v. Utah, 773 F.2d 1087 (10th Cir.1985)(en banc), cert. denied, 479 U.S. 994 (1986), over the boundaries of the reservation as this issue is not relevant to our disposition of her claims. We note, however, that the issue was recently resolved in Hagen v. Utah, 114 S.Ct. 958, 964-65 (1994)
 
 
 [6]
 The Utah Supreme Court has held that Roosevelt, Utah, is not part of the reservation. State v. Coando, 858 P.2d 926, 927 (Utah 1992). Fort Duchesne, however, is "situated on Indian trust lands." Hagen, 114 S.Ct. at 970. Land held in trust for Indian use is considered Indian country. Ross, 905 F.2d at 1352. It is unclear from the complaint exactly where the arrest occurred. However, we must accept the allegations of the complaint as true for purposes of Rule 12(b)(6) analysis and, in any event, none of the defendants dispute that the arrest occurred on the reservation
 
 
 [7]
 Plaintiffs failed to comply with Fed.R.App.P. 8(a)
 
 
 [8]
 See Fed.R.App.P. 29 (providing that, absent consent of all parties or showing of cause, brief of amicus curiae must be filed within time allowed for filing brief of party whose position amicus brief will support)