**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**OCT 16 2001**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

SOUTHWEST AIR AMBULANCE,
INC., a New Mexico corporation, and
JOHN RICHARDSON,

     Plaintiffs - Appellants,

v.

THE CITY OF LAS CRUCES, a political
subdivision of the State of New Mexico,

     Defendant - Appellee.

No. 99-2344

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
(D.C. No. CIV-99-622-LFG/DJS)

---

Randolph B. Felker (Mariana G. Geer, with him on the briefs), Felker, Ish, Ritchie &
Geer, P. A., Santa Fe, New Mexico, for Plaintiffs-Appellants.

Mary T. Torres, Modrall, Sperling, Roehl, Harris & Sisk, P.A., Las Cruces, New Mexico,
for Defendant-Appellee.

---

Before **SEYMOUR**, **HOLLOWAY** and **MURPHY**, Circuit Judges.

---

**HOLLOWAY**, Circuit Judge.

---

     This appeal comes to us from the granting of a Fed. R. Civ. P. 12(b)(6) motion to

dismiss the plaintiffs' action challenging the legality and enforcement of a municipal

ordinance setting fees at the Las Cruces International Airport. We affirm in part and reverse in part as explained below.

## I

Southwest Air Ambulance, Inc. (Southwest) operates an air ambulance service from points in and outside of New Mexico, transporting patients to and from hospitals and providing emergency medical assistance during flight. John Richardson is the president of Southwest. Some of Southwest's flights operate out of the Las Cruces International Airport (the Airport), which is owned and operated by the City of Las Cruces (the City).

On June 1, 1998, the City enacted Las Cruces Municipal Code, Art. II, § 7.5031 (Ord. No. 1677, 6-1-98), an ordinance requiring all businesses conducting flight operations from the Airport to execute "non-exclusive leases" with the City as a predicate for the right to land at or take off from the Airport. In part the ordinance provides:

> All commercial operations, other than transient commercial aircraft operators shall enter into an airport commercial lease, at those terms and conditions established by resolution of the city council, before beginning the conduct of any commercial activity, basing an aircraft at the Airport, or occupying any property upon the Airport.

Id. at § 7.5-31(c).

The ordinance further provides that

> Persons not in possession of an airport commercial lease, other than transient aircraft operators, or those otherwise permitted by this chapter, are prohibited from offering any commercial service to the public upon or within the boundaries of the Airport.

Id. at § 7.5-31(d).

The ordinance specifies that "[f]ailure to pay city council approved fees and charges in the time and manner established by the city council, shall be considered a violation of this ordinance," id. § 7.5-33(b), and that "[a]ny violation of this chapter shall be a misdemeanor and punishable as provided in § 1-10 of the Las Cruces Municipal Code," id. at 7.5-96(a). This provision establishes that "[e]xcept as otherwise provided, a person convicted of a violation of this Code shall be guilty of a petty misdemeanor and shall be punished by a fine not exceeding $500.00, imprisonment for a term not exceeding 90 days, or both." Id. at § 1-10(c). The Municipal Code also provides that "[f]or violations of this Code that are continuous with respect to time, each day the violation continues is a separate offense." Id. at § 1-10(c).

Pursuant to its authority under § 7.5-31(c), the Las Cruces City Council mandated that "Residents shall pay a percentage of their Gross Receipts . . . as their lease fee," and established a fee of 0.5% for operators engaged in "On-demand Flying Services." See City Council Resolution 98-371, Las Cruces International Airport Policies, § 5(3)(a)(2). In other words, the City's airport lease fee is calculated by assessing not just the receipts from an airline's operations at the Las Cruces airport, but also by taking into account the gross receipts from an airline's entire operations regardless of location, thereby including activities carried out entirely outside the confines of the City of Las Cruces or even outside the State of New Mexico.

-3-

Southwest claims that the City threatened to "shut down" its operations at the Airport unless it signed the proposed lease. When Southwest refused and its president John Richardson spoke in opposition to the ordinance, the City threatened to criminally prosecute both Southwest and Richardson unless they "voluntarily" executed the lease. When they continued to refuse to do so, on approximately March 8, 1999, the City commenced a criminal action against Richardson in the Las Cruces Municipal Court alleging violation of the ordinance, and sought penalties of up to $500 and incarceration of Richardson for up to 90 days for each day the lease was not signed under §1.10(a) of the Municipal Code.

On June 2, 1999, Richardson and Southwest filed suit against the City in the federal district court for the District of New Mexico, alleging that the City's ordinance violated the federal Anti-Head Tax Act (AHTA), 49 U.S.C. § 40116. They also asserted claims under 42 U.S.C. § 1983 for violations of the Commerce Clause and the First Amendment of the United States Constitution, and the AHTA. The Plaintiffs also asserted pendent state claims, and sought declaratory and injunctive relief and damages. Additionally, Richardson himself alleged that the City's criminal action against him was initiated and carried through for ulterior purposes and constitutes malicious prosecution and/or abuse of legal process, in violation of his constitutional rights of due process of law and freedom of speech. Complaint at 6, App. at 9.

On June 11, 1999, a hearing was held before the Las Cruces Municipal Court

-4-

concerning the criminal charges. Richardson avers that at the meeting the municipal judge was informed of the concurrent federal suit, and that he ordered the municipal proceedings to be held in abeyance until the federal action was concluded. App. at 53.

On July 6, 1999, the City filed a Fed. R. Civ. P. 12(b)(6) motion to dismiss in the federal case, arguing that the AHTA does not afford a private right of action; that the AHTA forecloses Commerce Clause review; that the Plaintiffs had not stated proper § 1983 claims; that the abstention doctrine of Younger v. Harris, 401 U.S. 37 (1971), barred Plaintiffs' claims concerning the criminal prosecution; and that the court should decline to exercise jurisdiction over the pendent state law claims. App. at 20.

A magistrate judge, sitting as a district judge by agreement of the parties,[1] granted the motion to dismiss. See Memorandum Opinion and Order, Appendix at 78-98. He held that the Plaintiffs had no private right of action under the AHTA; that they could contest the validity of the ordinance only by filing a complaint with the Department of Transportation; and that no claim under § 1983 had been stated. He also dismissed the pendent state law claims. The Plaintiffs filed a motion to reconsider and to alter or amend the judgment, pursuant to Fed. R. Civ. P. 59(e). Id. at 101. The magistrate judge denied the motion. See Memorandum Opinion and Order Denying Motion for Reconsideration. App. 130-132.

This appeal follows. The Plaintiffs contend: (1) the magistrate judge erred in

---

[1]See 28 U.S.C. § 636(c)(1).

ruling that there is no private right of action under the AHTA and that Plaintiffs' redress lies with administrative remedies that must be pursued before the Federal Aviation Administration; (2) the magistrate judge erred in ruling that Plaintiffs had not stated claims under § 1983; (3) the magistrate judge erred in dismissing Plaintiffs' Commerce Clause claim; and (4) the magistrate judge erred in ruling that the Younger v. Harris abstention doctrine barred federal court consideration of Plaintiffs' claims.

For the reasons discussed below, we affirm the magistrate judge with respect to his rulings regarding the lack of an implied private right of action under the AHTA and the dismissal of the Commerce Clause claim, but reverse his rulings with respect to § 1983 and the Younger abstention doctrine.

## II

### DOES THE ANTI-HEAD TAX ACT PROVIDE A PRIVATE RIGHT OF ACTION?

Plaintiffs contend that the magistrate judge erred in ruling that there is no private right of action provided by the AHTA. We disagree with their position.

### A

Congress enacted the Anti-Head Tax Act in 1973 in response to the Supreme Court's decision in Evansville-Vanderburgh Airport Auth. Dist. v. Delta Airlines, Inc., 405 U.S. 707 (1972), which held that state and local authorities were not precluded by the Constitution from assessing a charge of $1 per commercial airline passenger to help

defray the costs of airport construction and maintenance. Id. at 709. In response,

Congress enacted the AHTA to "ensure . . . that local 'head' taxes will not be permitted to

inhibit the flow of interstate commerce." Northwest Airlines, Inc. v. County of Kent, 510

U.S. 355, 363 (1994) (quoting S.Rep. No. 93-12, p.4 (1973)); see also Aloha Airlines,

Inc. v. Director of Taxation of Hawaii, 464 U.S. 7, 9-10 (1983) (discussing history of

AHTA).

Two provisions of the AHTA are important for the instant case. The first,

originally codified as § 1513(a) and now codified as 49 U.S.C. § 40116(b),[2] provides in

part:

> **(b) Prohibitions.**--Except as provided in subsection (c) of this section and
> section 40117 of this title, a State, a political subdivision of a State, and any
> person that has purchased or leased an airport under section 47134 of this
> title, may not levy or collect a tax, fee, head charge, or other charge on–
>
> **(1)** an individual traveling in air commerce;
>
> **(2)** the transportation of an individual traveling in air commerce;
>
> **(3)** the sale of air transportation; or
>
> **(4)** the gross receipts from that air commerce or transportation.

Id. (emphasis added).

The second provision, originally codified as § 1513(b) and now codified as 49

U.S.C. § 40116(e), is read in conjunction with the first. Northwest Airlines, 510 U.S. at

---

[2]Both parties cite throughout their briefs the pre-1994 version of the statute. It is helpful
to cite the current version of the United States Code.

365-66 ("But § 1513(a) does not stand alone. That subsection's prohibition is immediately modified by § 1513(b)'s permission. . . . Sections 1513(a) and (b) together instruct that airport user fees are permissible only if, and to the extent that, they fall within § 1513(b)'s saving clause, which removes from § 1513(a)'s ban 'reasonable rental charges, landing fees, and other service charges from aircraft operators for the use of airport facilities.'") (citing Wardair Canada Inc. v. Florida Dep't of Revenue, 477 U.S. 1, 15-16 (1986) (Burger, C.J., concurring in part and concurring in judgment)); see also Aloha Airlines, 464 U.S. at 12 n.6 ("§ 1513(b) clarifies Congress's view that the States are still free to impose on airlines and air carriers 'taxes other than those enumerated in subsection (a),' such as property taxes, net income taxes, and franchise taxes."). This provision says, inter alia, that notwithstanding § 40116(b), certain types of reasonable fees and charges may be levied:

> Except as provided in subsection (d) of this section, a State or political subdivision of a state may levy or collect . . . (2) reasonable rental charges, landing fees, and other service charges from aircraft operators for using airport facilities of an airport owned or operated by that State or subdivision.

49 U.S.C. § 40116(e).

In the court below, Plaintiffs argued that the City's ordinance violated § 40116(b)'s prohibition on taxes based on gross receipts. The district court, however, did not reach this question, and dismissed the action on the ground that the AHTA does not provide an implied private cause of action. We now turn to this question.

**B**

In <u>Aloha Airlines, Inc. v. Director of Taxation of Hawaii</u>, 464 U.S. 7 (1983), the Supreme Court considered whether the AHTA preempted a Hawaii public service company tax, which provided: "There shall be levied and assessed upon each airline a tax of four per cent of its gross income each year from the airline business." <u>Id.</u> at 10 (quoting Haw. Rev. Stat. § 239-6 (1976)). However, Hawaii, rather than describing this tax as a tax on gross receipts, which would be plainly prohibited by § 1513(a), claimed that it was merely a "means of taxing the personal property of the airline," <u>id.</u> (quoting Haw. Rev. Stat. § 239-6 (1976)), and thus fell within the saving clause provided by § 1513(b).

The Supreme Court, however, reversed the Hawaii Supreme Court's decision upholding the statute, finding that the Hawaii court had failed to give effect to the "plain meaning" of § 1513(a)'s preemption of taxes on gross receipts. <u>Aloha Airlines</u>, 464 U.S. at 12. The Court was "unpersuaded by [Hawaii's] contention that, because the Hawaii legislature styled § 239-6 as a property tax measured by gross receipts rather than as a straight-forward gross receipts tax, the provision should escape preemption under § 1513(b)'s exemption for property taxes." Rejecting this proposition, the Court categorically held: "<u>The manner in which the state legislature has described and categorized § 239-6 cannot mask the fact that the purpose and effect of the provision is to</u>

impose a levy upon the gross receipts of airlines." Aloha Airlines, 464 U.S. at 13-14 (footnote omitted) (emphasis added).[3]

Plaintiffs contend, relying on Aloha Airlines, as well as on In re Tax Appeal of Kamikawa v. United Parcel Service, Inc., 966 P.2d 648, 655 (Haw. 1998), and Republic Airlines, Inc. v. Dep't of Treasury, 427 N.W.2d 182, 186 (Mich.App. 1988), appeal denied (May 3, 1989), that any fee imposed by a governmental authority which is measured as a percentage of an airline's gross income violates the AHTA, and thus that the City's ordinance using gross receipts as the basis for calculating rental fees is illegal on its face. The magistrate judge, however, relying on Air Transport Ass'n v. City of Los Angeles, 844 F. Supp. 550, 554 (C.D.Cal. 1994), did not reach the merits of Southwest's claim, and instead ruled "there is no implied private right of action under the AHTA." Id. Consequently, any remedy available to Southwest must be pursued administratively before the Department of Transportation's Federal Aviation Administration. Memorandum Opinion and Order. App. at 84.

_____

[3]Although the Aloha Airlines opinion referenced the fact that the AHTA prohibited levies on gross receipts, whether taxed "directly or indirectly," (language that was eliminated in the AHTA's subsequent re-codification), we are convinced that the change in the statutory language does not affect the continuing validity of the Court's holding because, as the revision notes make clear, the alteration was made only to omit "surplus."

The Supreme Court again considered the application of the AHTA in Northwest Airlines, Inc. v. County of Kent, 510 U.S. 355 (1994), this time considering whether user fees imposed by the Kent County International Airport in Grand Rapids, Michigan, were "reasonable" within the meaning of § 1513(b). The Court, however, declined to address the question at issue in the instant case, whether the AHTA provides a private right of action. Northwest Airlines, 510 U.S. at 364.

We agree with the magistrate judge and hold that the AHTA does not provide a private right of action. As the Supreme Court has made clear, "the fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person." Touche Ross & Co. v. Redington, 442 U.S. 560, 568 (1979) (quoting Cannon v. University of Chicago, 441 U.S. 677, 688 (1979)). Rather, determining whether a private right of action should be implied requires discerning Congress' intent. "The question whether a statute creates a cause of action, either expressly or by implication, is basically a matter of statutory construction," such that "what must ultimately be determined is whether Congress intended to create the private remedy asserted." Transamerica Mortgage Advisors, Inc. v. Lewis, 444 U.S. 11, 16 (1979).

In Cort v. Ash, 422 U.S. 66 (1975), the Supreme Court established a four-part test for determining whether Congress so intended. The factors identified by the Court were: (1) is the plaintiff part of the class for whose benefit the statute was enacted; (2) is there any indication of legislative intent, explicit or implicit, either to create or to deny a private right of action; (3) is it consistent with the underlying purpose of the legislative scheme to imply a private right of action for the plaintiff; and (4) is the cause of action one traditionally relegated to state law, in an area basically of concern to the states, so that it would be inappropriate to infer a cause of action based solely on federal law. Id. at 78.

In subsequent cases decided after Cort, however, the Court has refined its test for

determining whether to imply a private right of action by emphasizing the second of the Cort factors – whether there is an indication of congressional intent to create a private cause of action. Touche Ross, 442 U.S. at 575. Following the Court's clarification, we have held that

> In determining whether a private cause of action is implicit in a statute not expressly providing one, the central inquiry is whether Congress intended to create a private cause of action. . . . [R]eliance on Cort v. Ash is misplaced. Cort's four factors have been effectively condensed into one – whether Congress, expressly or by implication, intended to create a private cause of action.

Sonnenfeld v. City & County of Denver, 100 F.3d 744, 747 (10th Cir. 1996) (internal citations omitted) (emphasis added); see also Davis-Warren Auctioneers, J.V. v. Federal Deposit Ins. Corp., 215 F.3d 1159, 1162 (10th Cir. 2000) ("To decide whether a private right of action is implicit in a statute, we must determine 'whether Congress, expressly or by implication, intended to create a private cause of action.'") (quoting Sonnenfeld, 100 F.3d at 747); Chemical Weapons Working Group, Inc. v. U.S. Dep't of the Army, 111 F.3d 1485, 1493 (10th Cir. 1997) ("In determining whether an implied private right of action exists under a particular statute, the focus is solely on congressional intent."); L'ggrke v. Benkula, 966 F.2d 1346, 1347 (10th Cir. 1992); Shoultz v. Monfort of Colorado, Inc., 754 F.2d 318, 323 (10th Cir. 1985), cert. denied, 475 U.S. 1044 (1986) ("The Court has . . . 'plainly stated that our focus must be on the intent of Congress.'") (quoting Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran, 456 U.S. 353, 377 (1982)).

In Chemical Weapons, 111 F.3d at 1493, we considered the argument that the 1986 Department of Defense Authorization Act provided an implied private right of action for "maximum protection" from the disposal of the nation's chemical weapons supply because the statute was "mandatory" in tone and it was especially created to protect the general public, which the plaintiffs claimed to represent. We disagreed and analogized to the Supreme Court's decision in California v. Sierra Club, 451 U.S. 287 (1981), which held that the 1899 Rivers and Harbors Appropriation Act did not imply a private right of action despite the fact that the plaintiffs were members of the class for whom the statute was passed. The general proscription contained in that statute was intended to be enforced through "a general regulatory scheme" administered by the Secretary of War and not through the vindication of private rights. Chemical Weapons, 111 F.3d at 1493-94 (quoting Sierra Club, 451 U.S. at 298). Consequently, we held that no right of action should be implied from the 1986 Defense Authorization Act, though it was mandatory in tone and was passed for the benefit of the general public. Id. at 1494. Rather, like the 1899 Act at issue in Sierra Club, the maximum protection mandate established by Congress in the 1986 Defense Authorization Act was "fully enforceable through a general regulatory scheme, comprised in this instance by the myriad of environmental statutes that regulate the Army's incineration operations." Id.

We are convinced that the logic that underpinned our holding in Chemical Weapons applies with equal force here. Accordingly we feel that no implied private right

of action was created by the AHTA.  In Northwest Airlines, the Court noted that the "Secretary of Transportation is charged with administering the federal aviation laws, including the AHTA."  Northwest, 510 U.S. at 366-67 (emphasis added).  The key point is that the "Federal Aviation Act . . . encompasses the AHTA . . . ."  Id. at 367 n.11 (emphasis added).  Consequently, the Federal Aviation Act's provision that "[a]ny person may file with the Secretary of Transportation . . . a complaint in writing with respect to anything done or omitted to be done by any person in contravention of any provision of [the Act], or of any requirement established pursuant thereto," applies with full force to violations of the AHTA.  Id. (quoting the Federal Aviation Act) (alterations in original).  Since the Act clearly says that complaints may be filed with the Secretary concerning "anything done . . . in contravention" of the AHTA (as encompassed by the Federal Aviation Act), Plaintiffs' contention that the Department of Transportation can only entertain challenges to the reasonableness of fees is incorrect.

We are persuaded that the fact that Congress provided a means by which violations of the AHTA are "fully enforceable through a general regulatory scheme," Chemical Weapons, 111 F.3d at 1494, indicates that the weight of the evidence of congressional intent is  against the suggestion that Congress intended to create a private right of action in the AHTA.  See Anderson v. USAir, Inc., 818 F.2d 49, 55 (D.C. Cir. 1987) (holding that section 404(a) of the FAA does not create a private right of action and drawing support for that conclusion by noting only one section of the Federal Aviation Act allows

-14-

"any party in interest" to bring suit); <u>Montauk-Caribbean Airways, Inc. v. Hope</u>, 784 F.2d 91, 97 (2d Cir. 1986) (holding there is no private right of action under the Federal Aviation Act).

## C

We recognize that our holding places us at odds with opinions of the First and Sixth Circuits, which have held that the AHTA does create a private right of action.  <u>See</u> <u>Interface Group, Inc. v. Massachusetts Port Authority</u>, 816 F.2d 9, 16 (1st Cir. 1987); <u>Northwest Airlines, Inc. v. County of Kent</u>, 955 F.2d 1054, 1058 (6th Cir. 1992), *aff'd*, 510 U.S. 355 (1994) (the Supreme Court not reaching implied right of action question). Nonetheless, after careful consideration, we are convinced that under Supreme Court precedent and the law of this circuit, there is no implied private right of action under the AHTA.  Our reasons for differing with those Circuits follow.

First, we note that the First and Sixth Circuits applied all four factors earlier used in the <u>Cort</u> test.  However, as the Supreme Court has made clear, the central inquiry remains whether Congress intended to create, either expressly or by implication, a private right of action.  <u>Touche Ross</u>, 442 U.S. at 575.  As the Court recently demonstrated when determining whether Title VI of the Civil Rights Act of 1964 created a private right of action to enforce regulations promulgated thereunder, a court should interpret the statute

-15-

Congress passed. Alexander v. Sandoval, 121 S. Ct. 1511, 1519 (2001). "The judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but a private remedy. Statutory intent on this latter point is determinative. Without it, a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute." Id. at 1519-1520 (emphasis added).

We have followed such analysis. See Sonnenfeld v. City & County of Denver, 100 F.3d 744, 747 (10th Cir. 1996) (rejecting reliance on Cort and stating: "Cort's four factors have been effectively condensed into one – whether Congress, expressly or by implication, intended to create a private cause of action."). Thus, to the extent that the Interface Group and Northwest Airlines opinions relied upon considerations that this circuit, following Touche Ross, does not focus on (such as whether the plaintiff falls within the class for whose benefit the statute was enacted, whether a private right of action would further the statutory purpose, and whether such an action is traditionally relegated to the states), we do not find their reasoning persuasive.

Second, the First and Sixth Circuits noted that the AHTA does not include a reference to the "Secretary." This, they found, "suggests that Congress did not consider it especially important to employ administrative expertise in the statute's enforcement." Interface Group, 816 F.2d at 16; see also Northwest Airlines, Inc. v. County of Kent, 955 F.2d at 1058. Furthermore, the First and Sixth Circuits' decisions were influenced by

-16-

their observation that the AHTA "did not provide the extensive administrative and judicial enforcement scheme" present in these other statutes. Interface Group, 816 F.2d at 16; see also Northwest Airlines, 955 F.2d at 1058 ("As noted by the First Circuit, this statute does not mention the Secretary of Transportation nor an administrative or judicial enforcement scheme like those created in similar statutes.").

After giving careful consideration to these opinions, we must conclude differently. Although they are correct in noting the absence of references to the "Secretary" or to a special enforcement scheme unique to the AHTA, we are not persuaded that these omissions indicate a congressional intent to create a private right of action. As discussed earlier, the Federal Aviation Act encompasses the AHTA. As a result, plaintiffs alleging violations of the AHTA may avail themselves of the full panoply of administrative remedies offered under the Act. Northwest Airlines, 510 U.S. at 367 n.11 ("The Federal Aviation Act, which encompasses the AHTA . . . provides a mechanism for administrative adjudication, subject to judicial review in the courts of appeals, of alleged violations."); 14 C.F.R. § 13.5(a) ("Any person may file a complaint with the Administrator with respect to anything done or omitted to be done by any person in contravention of any provision of any Act or of any regulation or order issued under it, as to matters within the jurisdiction of the Administrator. . . ."). Consequently, we are convinced that congressional intention to create a private right of action should not be inferred from Congress' failure to include in the AHTA references to either the

-17-

"Secretary" or to an enforcement scheme. The fact that the Federal Aviation Act incorporates the AHTA renders any additional references to the Secretary or to administrative remedies unnecessary.[4]

Accordingly, we hold that the magistrate judge did not err in ruling that there is no implied private right of action under the AHTA.

## III

## SECTION 1983

With respect to the plaintiffs' claims asserted under 42 U.S.C. § 1983, the magistrate judge found that the mechanisms that Congress provided for the enforcement of the AHTA were sufficiently comprehensive to infer Congress intended those procedures to preclude a plaintiff's resort to § 1983. Accordingly he held that the Plaintiffs could not sustain claims under that statute based on violations of the AHTA. Memorandum Opinion and Order. App. at 89,90. The magistrate judge also dismissed by implication Plaintiffs' § 1983 claims alleging violations of the First Amendment, due process, and the Commerce Clause by dismissing the case as not cognizable in federal court. App. at 97.

---

[4]Plaintiffs also rely on Niagara Frontier Trans. Auth. v. Eastern Airlines, 658 F. Supp. 247 (W.D.N.Y. 1987). However, that court also applied all four factors from Cort, and addressing the question of congressional intent, found that "Congress's intent to create a private cause of action can be inferred from the most significant factor, the directly prohibitive language" of the statute. Id. at 250. We are not persuaded by this reasoning: prohibitory language alone is not evidence of congressional intent to create a private right of action.

Plaintiffs now contend that in these rulings the magistrate judge erred in three respects: first, they say the judge's ruling regarding the § 1983 claim (that the City's ordinance violates the AHTA) was error because there is no indication in the AHTA to suggest that Congress intended to foreclose § 1983 remedies; second, they say the magistrate judge erroneously dismissed Plaintiff Richardson's § 1983 claims based on alleged violations of his rights under the First Amendment and his right to due process; and third, they say the magistrate judge erred in dismissing the claim that the City's ordinance violates the Commerce Clause. We agree with Plaintiff's contention with respect to the first and second claims of error concerning the AHTA, and also then the First Amendment and due process respectively, and therefore reverse those rulings. However, we affirm the magistrate judge's ruling with respect to his third holding rejecting the Plaintiffs' Commerce Clause claim.

**A**

The fact that a federal statute does not give rise to an implied private right of action (as we found is the case with the AHTA) does not necessarily mean that a statutory violation cannot be remedied through a § 1983 action. Doe v. Broderick, 225 F.3d 440, 448 (4th Cir. 2000) ("We recognize, of course, that determining whether a statutory violation may be [remedied] through section 1983 'is a different inquiry than that

-19-

involved in determining whether a private right of action can be implied from a particular statute.'") (quoting Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 508 n.9 (1990)).

Section 1983, provides a cause of action against those who, operating under color of state law, deprive a person "of any rights, privileges, or immunities secured by the Constitution and laws," and includes within its purview rights secured by federal statutes. Maine v. Thiboutot, 448 U.S. 1, 4 (1980); Rural Water Dist. No. 1 v. City of Wilson, 243 F.3d 1263, 1274 (10th Cir. 2001) ("Section 1983 provides a private cause of action for violations of federal statutes, as well as for constitutional violations."). However, not all federal laws give rise to § 1983 liability. For a person to be able to avail himself of § 1983 to remedy a violation of a federal statute, he "must assert the violation of a federal right, not merely a violation of federal law." Blessing v. Freestone, 520 U.S. 329, 340 (1997) (citing Golden State Transit Corp. v. Los Angeles, 493 U.S. 103, 106 (1989)) (emphasis in original); see also Hill v. Ibarra, 954 F.2d 1516, 1520 (10th Cir. 1992) ("[T]here is no cause of action under § 1983 where the underlying statute does not create an enforceable right.") (citing Spielman v. Hildebrand, 873 F.2d 1377, 1386 (10th Cir. 1989)).

Determining the existence of a federal right requires examining three factors: whether Congress intended the provision in question to benefit one such as the plaintiff; whether the plaintiff demonstrated that the right assertedly protected by the statute is not so "vague and amorphous" that its enforcement would strain judicial competence; and

whether the statute unambiguously imposes a binding obligation on the states, i.e. "the provision giving rise to the asserted right must be couched in mandatory, rather than precatory, terms." Blessing, 520 U.S. at 340-41; see also Yvonne L. v. New Mexico Dep't of Human Services, 959 F.2d 883, 886 (10th Cir. 1992).

We are convinced that the AHTA satisfies these requirements. First, it is unambiguously clear that Congress intended the AHTA to protect airlines from illegal state or municipal taxation based on gross receipts. See 49 U.S.C. § 40116(b) ("[A] state . . . may not levy or collect a tax, fee, head charge, or other charge on . . . the gross receipts from that air commerce or transportation."); Aloha Airlines, 464 U.S. at 9 ("Following the Evansville-Vanderburgh Airport decision, Committees in both Houses of Congress held hearings on local taxation of air transportation. Both Committees concluded that the proliferation of local taxes burdened interstate air transportation. . .") (footnote omitted); id. at 14 n.10 ("The unambiguous proscription contained in § 1513(a) compels us to conclude that it preempts . . . state taxes imposed on or measured by the gross receipts of airlines.").

Second, the asserted right (to be free of levies or charges based on gross receipts) is not so vague or amorphous as to strain judicial competence, since all a court is required to do is to determine whether the challenged levy falls within the scope of § 40116(b)'s prohibition. This is the sort of task which the judiciary is both familiar with and competent to do. Third and finally, the statute is phrased as a mandatory, not precatory,

ban on such fees.

Accordingly, we are convinced that Plaintiffs have sufficiently alleged that the City has violated a federal right, and not merely a federal law. See Wright v. City of Roanoke Redevelopment & Housing Authority, 479 U.S. 418, 429-30 (1987) (holding that the Brooke Amendment to the Housing Act, which stated that tenants could be charged as rent no more and no less than thirty percent of their income, created an enforceable right within the meaning of § 1983 because it was a mandatory limitation intended to benefit tenants).

Our conclusion that Plaintiffs allege a violation of a federal right, however, only creates a rebuttable presumption that this right is enforceable through § 1983 because the Supreme Court has made clear that "dismissal is proper if Congress 'specifically foreclosed a remedy under § 1983.'" Blessing, 520 U.S. at 341 (quoting Smith v. Robinson, 468 U.S. 992, 1005 n.9 (1984)); see also Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 520-21 (1990) ("The burden is on the State to show by express provision or other specific evidence from the statute itself that Congress intended to foreclose such private enforcement.") (internal quotation omitted); Wright, 479 U.S. at 424 (stating that the defendant must "overcome its burden of showing that the remedial devices provided . . . are sufficiently comprehensive . . . to demonstrate congressional intent to preclude the remedy of suits under § 1983") (internal quotations omitted); Middlesex County Sewerage Auth. v. Nat'l Sea Clammers Assoc., 453 U.S. 1, 20 (1981); Falvo v. Owasso

Indep. Sch. Dist. No. I-001, 233 F.3d 1203, 1211-12 (10th Cir. 2000). The pertinent language of the Family Education Rights and Privacy Act was akin to other statutory language that the Supreme Court has interpreted as creating "precise requirements." Also the interest plaintiff Falvo asserted was neither vague nor amorphous and thus is within judicial competence to enforce. Thus the statute creates an enforceable right within § 1983's meaning. This raises a rebuttable presumption under Wilder that Congress did not impliedly foreclose a § 1983 remedy by creating a comprehensive remedial scheme within the Act itself. Our reasoning in Falvo is pertinent here.

In sum, Congress can foreclose resort to § 1983 either expressly, i.e. by so stating in the text of the statute itself, or alternatively, it can do so by implication, i.e. "creating a comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983." Blessing, 520 U.S. at 341 (citing Livadas v. Bradshaw, 512 U.S. 107, 133 (1994)) (emphasis added); Sea Clammers, 453 U.S. at 20 ("When the remedial devices provided in a particular Act are sufficiently comprehensive, they may suffice to demonstrate a congressional intent to preclude the remedy of suits under § 1983.").

After carefully reviewing the details of the remedial enforcement scheme created by the Federal Aviation Act, which is available to those who allege violations of the AHTA, we are convinced that the scheme is neither incompatible with individual enforcement through § 1983, nor so comprehensive as to indicate an implied congressional intention to foreclose resort to it. To date, the Supreme Court has only

-23-

found two remedial schemes that supplant § 1983. <u>Blessing</u>, 520 U.S. at 347. In the first, <u>Sea Clammers</u>, 453 U.S. at 20, the Court held that because the Federal Water Pollution Control Act and the Marine Protection, Research, and Sanctuaries Act of 1972 "provide quite comprehensive enforcement mechanisms" in the form of a variety of specific statutory remedies, <u>including two citizen-suit provisions</u>, "the existence of these express remedies demonstrates . . . that Congress . . . intended to supplant any remedy that otherwise would be available under § 1983." <u>Id.</u> at 20-21 (emphasis added).

In the other, <u>Smith v. Robinson</u>, 468 U.S. 992, 1009 (1988), the Court held that Congress intended for the Education of the Handicapped Act (EHA) to "be the exclusive avenue through which a plaintiff may assert those claims," because the Act "is a comprehensive scheme set up by Congress to aid the States in complying with their constitutional obligations to provide public education for handicapped children." Specifically, in <u>Smith</u> the Court pointed to the statute's creation of "an elaborate procedural mechanism to protect the rights of handicapped children." and noted that the "procedures not only ensure that hearings conducted by the State are fair and adequate" but "also effect Congress' intent that each child's individual educational needs be worked out through a process that begins on the local level and includes ongoing parental involvement, detailed procedural safeguards, and a right to judicial review." <u>Id.</u> at 1010-11.[5]

---

[5]Shortly after <u>Smith</u> was decided, Congress amended the EHA. <u>See</u> 20 U.S.C. § 1415 (f) (1994). The Circuits are split as to whether the amendment superseded the <u>Smith</u> holding

On the other hand where such special circumstances (which the Supreme Court found to be present in <u>Sea Clammers</u> and <u>Smith</u>) are absent, the Court has refused to hold that a statute precludes enforcement through § 1983.  For instance, in <u>Wright</u>, 479 U.S. at 429, the Supreme Court held that the Brooke Amendment to the Housing Act did not preclude enforcement through § 1983 claims.  In distinguishing <u>Sea Clammers</u> and <u>Smith</u>, <u>Wright</u> observed that in those cases, unlike in <u>Wright</u>, "the statutes at issue themselves provided for private judicial remedies, thereby evidencing congressional intent to supplant the § 1983 remedy."  <u>Wright</u>, 479 U.S. at 427.  The Brooke Amendment and the rest of the Housing Act, on the other hand, lacked such private judicial remedies.  <u>Id.</u>  Moreover, the Court found the Court of Appeals' reliance on HUD's authority (to audit, enforce annual contribution contracts, and cut off federal funds) was in error as these were deemed to be merely "generalized powers" which are "insufficient to indicate a congressional intention to foreclose § 1983 remedies."  <u>Id.</u> at 428.  Similarly, in <u>Blessing</u>,

_____

entirely, or whether claims can be asserted under some statutes in addition to the EHA's successor, the Individuals with Disabilities Education Act (IDEA), but not under § 1983.  We have held that the § 1983 remedies are not available for a strictly IDEA violation.  <u>Padilla ex rel. Padilla v. School Dist. No. 1 in City & County of Denver, Colo.</u>, 233 F.3d 1268, 1273 (10th Cir., 2000).  <u>But cf. Marie O. v. Edgar</u>, 131 F.3d 610, 622 (7th Cir. 1997) ("§ 1415(f) was enacted for the express purpose of ensuring that § 1983 claims would be available to enforce the IDEA"), and <u>W.B. v. Matula</u>, 67 F.3d 484m 494 (3d Cir. 1995) (same).  In spite of the split, however, and the congressional action to partially alter the <u>Smith</u> ruling, the Court's analysis in <u>Smith</u> remains relevant, <u>see</u> <u>Bruneau ex rel. Schofield v. South Kortright Cent. School Dist.</u>, 163 F.3d 749, 758 n.1 (2d Cir. 1998), and demonstrates that only under unusual circumstances will a remedial scheme be found to have supplanted § 1983.  That Congress expressed its disagreement with the Court's analysis in <u>Smith</u> only serves to show the rarity of such circumstances.

In <u>Smith</u>, the Court found that the petitioners' constitutional claims were "virtually identical to their EHA claims."  In the instant case, however, as discussed <u>infra</u>, Richardson asserts independent constitutional claims based on the First Amendment and due process.

520 U.S. at 347, the Court explained its <u>Sea Clammers</u> decision by emphasizing that the statutes at issue there contained several provisions which "authorized private individuals to initiate enforcement actions."  And in explaining the reasoning behind <u>Smith</u>, it placed great weight on the fact that the statute's review scheme "permitted aggrieved individuals to involve '<u>carefully tailored' local administrative procedures</u> followed by judicial review."  <u>Id.</u> (quoting <u>Smith</u>, 468 U.S. at 1009) (emphasis added).

In view of these analyses by the Supreme Court, we feel we should not find that the AHTA's enforcement scheme is so comprehensive as to imply that Congress intended to foreclose § 1983 remedies, particularly since the Supreme Court and this court have repeatedly cautioned that "'[w]e do not lightly conclude that Congress intended to preclude reliance on § 1983 as a remedy' for the deprivation of a federally secured right." <u>Wright</u>, 479 U.S. at 423-24 (quoting <u>Smith</u>, 468 U.S. at 1012); <u>Wilder</u>, 496 U.S. at 520; <u>Falvo</u>, 233 F.3d at 1212.  Since there are neither provisions for citizen suits nor carefully tailored procedures like those present in <u>Smith</u> designed to involve the affected handicapped child's parents, we are not persuaded that Congress intended to foreclose § 1983 actions on the instant claims.

Accordingly, we reverse the § 1983 ruling of the magistrate judge and hold that Plaintiffs may assert claims under § 1983 to remedy the alleged violations of the AHTA.

**B**

We also agree with Plaintiff Richardson that the magistrate judge erred in ruling that he could not assert claims under § 1983 for alleged constitutional violations that are independent of his allegation that the City's ordinance violates the AHTA. In this circuit we have made it clear that the Court's opinions in Sea Clammers and Smith are not understood to preclude plaintiffs from bringing § 1983 claims based on independent constitutional violations. Seamons v. Snow, 84 F.3d 1226, 1233-34 & n.8 (10th Cir. 1996) (holding that Title IX does not bar a § 1983 action so long as it is not based on a violation of Title IX itself); see also Lillard v. Shelby County Bd. of Educ., 76 F.3d 716, 723 (6th Cir. 1996) ("Plainly National Sea Clammers does not, on its face, stand for the proposition that a federal statutory scheme can preempt independently existing constitutional rights, which have contours distinct from the statutory claim, thus prohibiting a section 1983 action grounded in substantive due process. Instead, that case speaks only to whether federal statutory rights can be enforced both through the statute itself and through section 1983.") (emphasis in original).[6]

Accordingly, we reverse the magistrate judge's dismissal of Plaintiff Richardson's independent constitutional claims for violation of the First Amendment and his due process rights.

---

[6] But see Bruneau ex rel. Schofield v. South Kortright Cent. Sch. Dist., 163 F.3d 749, 757 (2d Cir. 1998) ("We see nothing in Sea Clammers that would support a constitutional rights exception.").

## C

The remaining § 1983 issue concerns Plaintiffs' contention that the magistrate judge erred by dismissing their § 1983 claim that the City's ordinance violates the Commerce Clause because it constitutes an undue burden on interstate commerce that is not justified by legitimate state or local concerns.  We agree with the magistrate judge's ruling.

Alleged state violations of the Commerce Clause may be challenged by suits brought under § 1983.  Dennis v. Higgins, 498 U.S. 439, 440 (1991).  Although the literal text of the Commerce Clause grants authority to Congress to "regulate Commerce . . . among the several States," U.S. Const. art. I, § 8, cl. 3, it has also been understood to directly limit the power of the States to discriminate against interstate commerce, i.e. to prohibit economic protectionism.  Wyoming v. Oklahoma, 502 U.S. 437, 454 (1992).  The Supreme Court has, however, recognized state authority in some instances to regulate matters of local concern, even though the regulation has some impact on interstate commerce.  See Cities Service Gas Co. v. Peerless Oil & Gas Co., 340 U.S. 179, 186 (1950).  In Cities Service, the Court upheld state regulation of minimum field gas prices which impacted both the intrastate and interstate cost of natural gas.  Limitations on such state authority were noted, however:

> It is now well settled that a state may regulate matters of local concern over which federal authority has not been exercised, even though the regulation

-28-

has some impact on interstate commerce. . . . The only requirements consistently recognized have been that the regulation not discriminate against or place an embargo on interstate commerce, that it safeguard an obvious state interest, and that the local interest at stake outweigh whatever national interest there might be in the prevention of state restrictions. . . . In any event, in a field of this complexity with such diverse interests involved, we cannot say that there is a clear national interest so harmed that the state price-fixing orders here employed fall within the ban of the Commerce Clause.

Id. at 186-88 (citations omitted).

Therefore Congress may permit the States to engage in regulation that would otherwise violate the dormant Commerce Clause, but "Congress must manifest its unambiguous intent before a federal statute will be read to permit or to approve such a violation of the Commerce Clause. . . ." Wyoming v. Oklahoma, 502 U.S. at 458. "Once Congress acts, courts are not free to review state taxes or other regulations under the dormant Commerce Clause." Merrion v. Jicarilla Apache Tribe, 455 U.S. 130, 154 (1982). In the instant case, we are persuaded that Congress, by enacting the AHTA, manifested the requisite intent to permit the States to engage in the sort of economic regulation challenged by these Plaintiffs. Accordingly, we affirm the magistrate judge's dismissal of their Commerce Clause claim.

## IV

## YOUNGER V. HARRIS ABSTENTION

Under the abstention doctrine articulated by the Supreme Court in Younger v.

Harris, 401 U.S. 37 (1971), "federal courts should not 'interfere with state court proceedings' by granting equitable relief – such as injunctions of important state proceedings or declaratory judgments regarding constitutional issues in those proceedings" when the state forum provides an adequate avenue for relief. Weitzel v. Div. of Occupational & Prof'l Licensing, 240 F.3d 871, 875 (10th Cir. 2001) (quoting Rienhardt v. Kelly, 164 F.3d 1296, 1302 (10th Cir. 1999)). This refusal to exercise federal jurisdiction arises from a desire to "avoid undue interference with states' conduct of their own affairs." J.B. ex rel. Hart v. Valdez, 186 F.3d 1280, 1291 (10th Cir. 1999) (quoting Seneca-Cayuga Tribe v. Oklahoma, 874 F.2d 709, 711 (10th Cir. 1989)).

For Younger abstention to be appropriate, three elements must be present: (1) interference with an ongoing state judicial proceeding; (2) involvement of important state interests; and (3) an adequate opportunity afforded in the state court proceedings to raise the federal claims. Valdez, 186 F.3d at 1291 (citing Middlesex County Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 432 (1982)). The magistrate judge, relying on Younger, dismissed Plaintiffs' claims based on the criminal prosecution in the municipal court. App. at 95.

We must disagree with the dismissal below. The parties do not dispute that the municipal court in this case stayed its own proceedings in favor of federal resolution of the issues. Consequently, an essential predicate to Younger abstention is absent: the presence of an ongoing state prosecution. See Walnut Props., Inc. v. City of Whittier, 861

-30-

F.2d 1102, 1107 (9th Cir. 1988) (holding that the <u>Younger</u> doctrine is propelled by concerns of federalism and comity which are not present where a state court has stayed its own proceedings pending resolution of the case in a federal forum).

We are not persuaded by the City's suggestion that although the municipal court has decided to hold its proceedings in abeyance, we should nonetheless invoke the <u>Younger</u> doctrine because the state prosecutor prefers the issues to be resolved in the municipal forum. We cannot agree that the prosecutor's preference should trump the considered decision of the municipal court. <u>Younger</u> abstention is, in essence, a doctrine founded on comity and in our view, abstaining from exercising federal jurisdiction and sending the case back to the municipal court (after that court had decided <u>sua</u> <u>sponte</u> to stay the proceeding), would function as something close to a writ of mandamus which would not be in harmony with the comity <u>Younger</u> was designed to foster.[7]

Accordingly, we reverse the magistrate judge's dismissal of Plaintiffs' claims based on the criminal prosecution.

---

[7]Because the magistrate judge dismissed Plaintiffs' pendent state law claims related to the criminal prosecution, believing (incorrectly) that there was no jurisdiction over the federal claims, we remand for the district court to reconsider whether it should exercise supplemental jurisdiction over these state law claims.

# V

## CONCLUSION

In sum, we **affirm** the magistrate judge's ruling that there is no implied private right of action provided by the Anti-Head Tax Act and his dismissal of Plaintiffs' Commerce Clause claim. However, we hold that Plaintiffs may seek to remedy violations of the AHTA through § 1983 and that they may also pursue independent constitutional claims through the remedy provided by § 1983. We therefore **reverse** the magistrate judge's rulings with respect to Plaintiffs' § 1983 claims founded on alleged violations of the AHTA and independent constitutional rights. We also hold that the magistrate judge should not have abstained from exercising jurisdiction over Plaintiffs' claims based on the criminal prosecution. We accordingly **reverse** the magistrate judge's dismissal of Plaintiffs' claims based on the <u>Younger</u> rationale. Finally, we **remand** for the federal district court to reconsider whether to exercise supplemental jurisdiction over Plaintiffs' pendent state law claims.

**IT IS SO ORDERED.**