**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**January 19, 2017**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

RICHARD DOUGLAS HACKFORD,

    Plaintiff - Appellant,

v.

THE STATE OF UTAH; WASATCH
COUNTY, a political subdivision of the
State of Utah; GARY HERBERT, in his
capacity as Governor of Utah; SEAN
D. REYES, in his capacity as Attorney
General of Utah; SCOTT SWEAT, in
his capacity as County Attorney for
Wasatch County, Utah; TYLER J.
BERG, in his capacity as Assistant
County Attorney for Wasatch County,
Utah,

    Defendants - Appellees.

No. 15-4120

_____

**Appeal from the United States District Court**
**for the District of Utah**
**(D.C. Nos. 2:75-CV-00408-BSJ and 2:14-CV-00645-BSJ)**
_____

Elizabeth A. Shaffer, Elizabeth A. Shaffer, PLLC, Park City, Utah, for Plaintiff-
Appellant.

Jesse Carl Trentadue (Britton R. Butterfield, with him on the brief) of Suitter
Axland, PLLC, Salt Lake City, Utah, for Wasatch County Defendants-Appellees.

Stanford E. Purser, Deputy Solicitor General (Tyler R. Green, Utah Solicitor General, Sean D. Reyes, Attorney General, Randy S. Hunter and Katharine H. Kinsman, Assistant Attorneys General, with him on the brief), Salt Lake City, Utah, for State of Utah Defendants-Appellees.

_____

Before **HOLMES**, **SEYMOUR**, and **MORITZ**, Circuit Judges.
_____

**SEYMOUR**, Circuit Judge.
_____

Richard Douglas Hackford brought this action seeking to enjoin the State of Utah's prosecution of the traffic offenses he committed on December 4, 2013, contending that he is an Indian and the offenses occurred in Indian Country. Concluding that Mr. Hackford failed to meet the requirements for avoiding state criminal jurisdiction, the district court denied his motion for a preliminary injunction and dismissed his complaint with prejudice. He appeals, and we affirm.

**I**

The parties agree that Mr. Hackford's traffic offenses occurred on State Road 40 around Mile Post 44 in Wasatch County, Utah, within what is called the Strawberry Valley Project area. It is further undisputed that this land was originally part of the Uintah and Ouray Indian Reservation. If the Strawberry Valley Project land were still within the reservation, it would be considered "Indian Country," which includes "all land within the limits of any Indian

2

reservation under the jurisdiction of the United States Government." 18 U.S.C. § 1151(a).

In dismissing the complaint, the district court held that the site of the offenses is no longer in Indian Country and that Mr. Hackford is not an Indian within the meaning of the relevant federal statutes. Because our determination that the alleged offenses occurred outside of Indian Country is sufficient to establish state jurisdiction, we need not reach the issue of Mr. Hackford's Indian status.[1]

## II

"[W]ithin Indian country, generally only the federal government or an Indian tribe may prosecute Indians for criminal offenses." *Ute Indian Tribe of the Uintah & Ouray Reservation v. Utah (Ute VI)*, 790 F.3d 1000, 1003 (10th Cir. 2015); *see also Cheyenne-Arapaho Tribes of Okla. v. Oklahoma*, 618 F.2d 665, 668 (10th Cir. 1980) ("States have no authority over Indians in Indian Country unless it is expressly conferred by Congress."). The Supreme Court has specifically held that "Congress has not granted criminal jurisdiction to the State of Utah to try crimes committed by Indians in Indian Country." *Hagen v. Utah*, 510 U.S. 339, 408 (1994). Accordingly, the issue here is whether the Strawberry

---

[1] We also need not address Wasatch County's contention that the injunctive and declaratory relief Mr. Hackford seeks is barred by the Anti-Injunction Act, 28 U.S.C. § 2283, and the Younger Doctrine, *see Younger v. Harris*, 401 U.S. 37 (1971).

Valley Project land ceased to be part of the Uintah and Ouray Indian Reservation and thereby ceased to be Indian Country, as the district court held.[2]

Because the facts surrounding the Strawberry Valley Project land are undisputed, we review *de novo* "the legal conclusion drawn from them by the district court." *Blatchford v. Sullivan*, 904 F.2d 542, 544 (10th Cir. 1990). In reviewing the district court's determination that the site of Mr. Hackford's alleged offenses is no longer Indian Country, it is useful to outline the history of this particular area and to review our past cases involving various Uintah and Ouray Indian Reservation border disputes.

The Uintah Indian Reservation was created by President Abraham Lincoln in an 1861 executive order and was later confirmed by Congress in 1864. Exec. Order of Oct. 3, 1861, *reprinted in* 1 CHARLES J. KAPPLER, INDIAN AFFAIRS: LAWS AND TREATIES 900 (1904); Act of May 5, 1864, ch. 77, 13 Stat. 63. In 1882, President Chester A. Arthur created a separate Reservation for the Uncompahgre Utes by executive order. Exec. Order of Jan. 5, 1882, *reprinted in* INDIAN AFFAIRS: LAWS AND TREATIES, *supra*, at 901. In 1886, the Uintah Valley Agency, which oversaw the Uintah Reservation, and the Ouray Agency, which oversaw the Uncompahgre Reservation, were consolidated.[3] The two

---

[2] Lands outside of a reservation can also qualify as Indian Country, because Indian Country by statute includes "dependent Indian communities" and "Indian allotments, the Indian titles to which have not been extinguished." 18 U.S.C. § 1151(b)-(c). No argument has been made that either of these categories apply to this site.

[3]The name Ouray comes from Chief Ouray, a legendary figure who served as the Chief of the Uncompahgre band of Utes from 1860 until his death in 1880. *See*

4

Reservations were merged, creating the Uintah and Ouray Reservation. U.S. OFFICE OF INDIAN AFFAIRS, DEPT. OF THE INTERIOR, ANNUAL REPORT OF THE COMMISSIONER OF INDIAN AFFAIRS 226 (1886).

Toward the end of the nineteenth century, federal policy shifted from creating reservations to breaking them up into individual allotments. *See Solem v. Bartlett*, 465 U.S. 463, 466-68 (1984); *see also* General Allotment Act, ch. 119, 24 Stat. 388 (1887). The Uintah and Ouray Indian Reservation was not immune to this policy shift. In a series of Acts between 1902 and 1905, Congress authorized the allotment of this Reservation and provided that any surplus, unallotted land would be "restored to the public domain" and opened to homesteaders. *See Hagen*, 510 U.S. at 402-406; Act of May 27, 1902, ch. 888, 32 Stat. 245, 263; Act of Mar. 3, 1905, ch. 1479, 33 Stat. 1048, 1069.

In 1905, Congress authorized the President to set aside part of the surplus land, before it was opened for settlement, "as an addition to the Uintah Forest Reserve" or as "a reservoir site or other lands necessary to conserve and protect the water supply for the Indians or for general agricultural development." 33 Stat. at 1070. President Roosevelt quickly took advantage of each option by presidential proclamation. The President's proclamation of July 14, 1905, described certain lands in the Uintah and Ouray Indian Reservation that were added to the Forest Reserve. 34 Stat. 3116, 3117. In August 1905, the President

Joey Bunch, *Chief Ouray's Acclaim was Underpinned by Search and Sorrow for Kidnapped "Apple,"* DENVER POST, Aug. 13, 2012, http://blogs.denverpost.com.

set aside land for the proposed Strawberry Valley Reservoir Project. *See* Kathryn L. MacKay, *The Strawberry Valley Reclamation Project and the Opening of the Uintah Indian Reservation*, 50 UTAH HISTORICAL Q. 68, 85-87 (Winter 1982). And in 1910, Congress directed the Secretary of the Interior to pay the Ute Indians the fixed sum of $1.25 per acre for this reclamation project land and provided that "[a]ll right, title, and interest of the Indians in the said lands are hereby extinguished." Act of April 4, 1910, ch. 140, 36 Stat. 285. Much later, in 1988, nearly all of the Strawberry Valley Project lands were added to the Uinta National Forest. Act of Oct. 31, 1988, Pub. L. No. 100-563, 102 Stat. 2826, 2826-27.

The district court determined here that the Strawberry Valley Project land "ceased to be part of Indian Country when it was withdrawn from the Uintah Indian Reservation and set aside for use as a reservoir, and that the status of this land did not change when it was subsequently incorporated into the Uinta National Forest." Aplt. App., vol. B at 354-55. We agree with this conclusion.

In *Solem*, the Supreme Court described the "first and governing principle" regarding the diminishment of Indian reservations:

> [O]nly Congress can divest a reservation of its land and diminish its boundaries. Once a block of land is set aside for an Indian Reservation and no matter what happens to the title of individual plots within the area, the entire block retains its reservation status until Congress explicitly indicates otherwise.

465 U.S. at 470 (internal citation omitted). "Diminishment, moreover, will not be lightly inferred." *Id*. The Court will only find diminishment if "Congress clearly

6

evince[s] an 'intent to change boundaries.'" *Id*. (quoting *Rosebud Sioux Tribe v. Kneip*, 430 U.S. 584, 615 (1977)).

The Ute Tribe has battled with the State of Utah over the issue of diminishment for decades. In 1975, the Tribe filed an action "seeking declaratory and injunctive relief establishing the exterior boundaries of the Uintah and Ouray Reservation." *Ute Indian Tribe v. Utah (Ute I)*, 521 F. Supp. 1072, 1075 (D. Utah 1981). The district court held that the land purchased through the 1910 Act for reservoir purposes was disestablished from the Uintah and Ouray Reservation. *Id*. at 1141. The court reasoned that "the transfer of all management and control of the lands to private parties, compounded with the express extinguishment of the Indians' interest [in the Act], is inconsistent with continuing Indian reservation status." *Id*.

Neither the Tribe nor the State defendants appealed the district court's holding regarding the Strawberry Valley Project land.[4] *Ute Indian Tribe v. Utah (Ute II)*, 716 F.2d 1298, 1314 (10th Cir. 1983) ("Neither side disputes the trial court's holding that the reservation was diminished to the extent of the 56,000-acre Strawberry River withdrawal."). On rehearing *en banc*, we reiterated that the

---

[4] In fact, in the present action the Ute Tribe intervened in the district court to assert that the court's 1981 ruling on the Strawberry Valley Project land was "final and conclusive, and is binding upon the citizens of both sovereigns." Aple. Supp. App. at 2. In so doing, the Tribe pointed out that the Department of the Interior, in response to an inquiry sent by Mr. Hackford's counsel, had asserted that the site of Mr. Hackford's offenses "IS NOT WITHIN THE AREA DESIGNATED AS INDIAN COUNTRY." *Id*. at 15.

1910 Act "clearly extinguished a portion of the reservation lands for reclamation purposes." *Ute Indian Tribe v. Utah (Ute III)*, 773 F.2d 1087, 1090 (10th Cir. 1985) (en banc). In fact, we contrasted the clarity of Congress's intent regarding the Strawberry Valley Project land with the more ambiguous language concerning other parts of the original reservation. *Id*. ("Congress showed that it could be explicit when it dealt with the reclamation lands.").[5]

Mr. Hackford asserts that our discussion of the Strawberry Valley Project land in *Ute III* was not a necessary holding because the Ute Indian Tribe had not appealed that issue. *See id*. at 1115 (Seth, J., dissenting) ("Neither side disputes the trial court's holding that the reservation was diminished to the extent of the 56,000-acre Strawberry River withdrawal."). Even so, our reasoning then still stands today—when Congress passed the 1910 statute providing that the Ute Indians would be paid a fixed sum of $1.25 per acre and that "[a]ll right, title, and interest of the Indians in the said lands are hereby extinguished," it "clearly evince[d] an intent" to diminish the Uintah and Ouray Indian Reservation. *See Solem*, 465 U.S. at 470. As the Court explained in *Nebraska v. Parker*, "language 'providing for the total surrender of tribal claims in exchange for a fixed payment' evinces Congress' intent to diminish a reservation . . . and creates 'an

---

[5] A later Supreme Court decision, *Hagen v. Utah*, 510 U.S. 399, partially overruled *Ute III* but only in regard to the lands opened up for settlement, not the Strawberry Valley Project land. *See Ute Indian Tribe of the Uintah & Ouray Reservation v. Utah* (*Ute V*), 114 F.3d 1513, 1519 (10th Cir. 1997); *see also Ute III*, 773 F.2d at 1115 (Seth, J., dissenting) ("The Strawberry River withdrawal has no bearing on the status of lands which were subsequently to be opened [to settlement].").

almost insurmountable presumption that Congress meant for the tribe's reservation to be diminished.'" 136 S. Ct. 1072, 1079 (2016) (quoting *South Dakota v. Yankton Sioux Tribe*, 552 U.S. 329, 345 (1998), and *Solem*, 465 U.S. at 470-71). Given the explicit language of the 1910 Act and its payment provision for the Strawberry Valley Project land, it is difficult to imagine a clearer example of diminishment.

Mr. Hackford nevertheless contends that even if the Strawberry Valley land lost its reservation status in 1910, the 1988 Act adding most of the Strawberry Valley land to the Uinta National Forest reinstated its reservation status. But Mr. Hackford does not provide any legal basis for this theory, and we have not found one. "[T]he test for determining whether land is Indian country does not turn upon whether that land is denominated 'trust land' or 'reservation.' Rather, we ask whether the area has been 'validly set apart for the use of the Indians as such, under the superintendence of the Government.'" *Okla. Tax Comm'n v. Citizen Band Potawatomi Indian Tribe of Okla.*, 498 U.S. 505, 511 (1991) (quoting *United States v. John*, 437 U.S. 634, 648-49 (1978)). Congress's stated purpose for modifying the boundary of the National Forest was "to provide more efficient management" of lands then administered by the Bureau of Reclamation. 102 Stat. at 2826; s*ee also* H.R. Rep. No. 99-799, at 2 (1986) (explaining that "[m]odification of the boundary of the Forest would increase the administrative flexibility of the Forest Service in this area."). There is no evidence that, by

9

making this interdepartmental transfer, Congress intended to "set apart" the lands of Strawberry Valley as part of the Uintah and Ouray Indian Reservation.[6]

Persevering further, Mr. Hackford argues that the State lacked jurisdiction over his traffic offenses because they occurred within a national forest, which is federal land. Federal law, however, provides that "the State wherein any such national forest is situated shall not, by reason of the establishment thereof, lose its jurisdiction, nor the inhabitants thereof . . . be absolved from their duties as citizens of the State." 16 U.S.C. § 480; *see United States v. Fields*, 516 F.3d 923, 932-33 (10th Cir. 2008) ("[T]he effect of § 480 was to enable states to 'maintain concurrent criminal and civil jurisdiction over national forests.'" (quoting *United States v. California*, 655 F.2d 914, 919 (9th Cir. 1980))); *see also* Utah Code Ann. § 63L-1-204. The State of Utah clearly has jurisdiction over Mr. Hackford's traffic offenses.

Given that Mr. Hackford's traffic offenses did not occur in Indian Country, the district court properly denied his motion for a preliminary injunction and dismissed his complaint. We **AFFIRM**.

---

[6] This is not to say that the rest of the Uinta National Forest has lost its reservation status, as Wasatch County suggests in its brief. *See, e.g.*, Aple.-Wasatch Br. at 22 ("[T]he National Forest and Strawberry Reservoir where Hackford was stopped . . . do not fall within the definition of 'Indian country.'"). We have repeatedly stated that the lands withdrawn in 1905 as an addition to the Uinta Forest Reserve did not cease to be part of the Uintah and Ouray Indian Reservation. *See Ute VI*, 790 F.3d at 1012*; Ute V*, 114 F.3d at 1529*; Ute III*, 773 F.2d at 1090. Simply because a section of non-Indian land was later added to the Forest Reserve does not vitiate the reservation status of the rest of the Reserve. *See Solem*, 465 U.S. at 470 ("Diminishment . . . will not be lightly inferred.").