**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**November 7, 2017**

**Elisabeth A. Shumaker**
**Clerk of Court**

UTE INDIAN TRIBE OF THE UINTAH
AND OURAY RESERVATION, a
federally recognized Indian Tribe, and a
federally chartered corporation; UINTAH
AND OURAY TRIBAL BUSINESS
COMMITTEE, SHAUN CHAPOOSE,
Chairman of the Uintah and Ouray Tribal
Business Committee; UTE ENERGY
HOLDINGS, a Delaware LLC,

      Plaintiffs - Appellants,

v.

HONORABLE BARRY G. LAWRENCE,
District Judge, Utah Third Judicial District
Court, in his individual and offical
capacities; LYNN D. BECKER,

      Defendants - Appellees.

No. 16-4154
(D.C. No. 2:16-CV-00579-RJS)
(D. Utah)

_____

**ORDER**
_____

Before **HARTZ** and **EBEL**, Circuit Judges.
_____

This matter is before the court on appellee Lynn D. Becker's *Petition for Panel
Rehearing and Request for Rehearing En Banc.* We also have a response from the
appellants.

Upon consideration, that part of the petition seeking panel rehearing is granted in part and only to the limited extent of the changes made to the attached revised Opinion. The request for panel rehearing is otherwise denied. The clerk is directed to file the amended decision attached to this order effective today's date.

The *Petition* and the response were also circulated to all the judges of the court who are in regular active service and who are not recused. *See* Fed. R. App. P. 35(a). As no judge on the original panel or the en banc court requested that a poll be called the request for en banc rehearing is denied.

Entered for the Court

ELISABETH A. SHUMAKER, Clerk

FILED
United States Court of Appeals
Tenth Circuit

November 7, 2017

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UTE INDIAN TRIBE OF THE UINTAH
AND OURAY RESERVATION, a
federally recognized Indian Tribe, and a
federally chartered corporation; UINTAH
AND OURAY TRIBAL BUSINESS
COMMITTEE, SHAUN CHAPOOSE,
Chairman of the Uintah and Ouray Tribal
Business Committee; UTE ENERGY
HOLDINGS, a Delaware LLC,

     Plaintiffs - Appellants,

v.

HONORABLE BARRY G. LAWRENCE,
District Judge, Utah Third Judicial District
Court, in his individual and official
capacities; LYNN D. BECKER,

     Defendants - Appellees.

No. 16-4154

_____

**Appeal from the United States District Court
for the District of Utah
(D.C. No. 2:16-CV-00579-RJS)**[*]
_____

---

[*] The Honorable Neil Gorsuch participated in the oral argument but not in the decision. The practice of this court permits the remaining two panel judges, if in agreement, to act as a quorum in resolving the appeal. *See* 28 U.S.C. § 46(d); *see also United States v. Wiles*, 106 F.3d 1516, 1516, at n* (10th Cir. 1997) (noting that this court allows remaining panel judges to act as a quorum to resolve an appeal). In this case, the two remaining panel members are in agreement.

Frances C. Bassett (Jeffrey S. Rasmussen, Thomas W. Fredericks, Jeremy J. Patterson, and Thomasina Real Bird, with him on the briefs), Fredericks Peebles & Morgan, Louisville, Colorado, for Ute Indian Tribe of the Uintah and Ouray Reservation, Utah, Plaintiffs-Appellants.

David K. Isom, Isom Law Firm, PLLC, Salt Lake City, Utah, for Defendant-Appellee, Lynn D. Becker.

Brent M. Johnson and Keisa L. Williams, Utah Administrative Office of the Courts, Salt Lake City, Utah, for Defendant-Appellee, Judge Barry G. Lawrence.

_____

Before **HARTZ** and **EBEL**, Circuit Judges.

_____

**HARTZ**, Circuit Judge.

_____

This appeal arises from a contract dispute between Lynn Becker and the Ute Indian Tribe of the Uintah and Ouray Reservation.[1] Our concern, however, is not the merits of the dispute but jurisdiction. Mr. Becker, who is not an Indian, pursued his claim against the Tribe in Utah state court. The Tribe responded by filing suit in the United States District Court for the District of Utah, asserting, among other things, that the state court lacked subject-matter jurisdiction to hear the case. But the federal district court in turn held that it lacked jurisdiction to consider the Tribe's challenge to the jurisdiction of the state court. We respectfully disagree with the district court.

---

[1] This appeal is brought by the Ute Indian Tribe; the Uintah and Ouray Tribal Business Committee (the Tribe's elected governing body); Ute Energy Holdings, LLC (whose 100% owner and sole member is the Tribe); and Shaun Chapoose (Chairman of the Tribal Business Committee). Because the appellants raise identical arguments, we will generally refer to them all as the Tribe.

2

Exercising jurisdiction under 28 U.S.C. § 1291, we reverse and remand for further proceedings. We hold that the Tribe's claim—that federal law precludes state-court jurisdiction over a claim against Indians arising on the reservation—presents a federal question that sustains federal jurisdiction.

## I.    BACKGROUND

The contract at issue is the Independent Contractor Agreement (the Contract) between the Tribe and Mr. Becker, a former manager in the Tribe's Energy and Minerals Department. Mr. Becker claims that the Tribe breached the Contract by failing to pay him 2% of net revenue distributed to Ute Energy Holdings, LLC from Ute Energy, LLC. After Mr. Becker filed suit in Utah state court, the Tribe filed this suit against him and Judge Barry Lawrence, the state judge presiding over Mr. Becker's suit, seeking declarations that (1) the state court lacks subject-matter jurisdiction over the dispute, (2) the Contract is void under federal and tribal law, and (3) there is no valid waiver of the Tribe's sovereign immunity for the claims asserted in state court. The Tribe also sought a preliminary injunction ordering the defendants to refrain from further action in the state-court proceedings. The Tribe invoked jurisdiction under 28 U.S.C. § 1331 (federal-question jurisdiction) and § 1362 (federal question when suit brought by an Indian tribe). Jurisdiction under § 1331 is limited to "actions arising under the Constitution, laws, or treaties of the United States"; and jurisdiction under § 1362 requires that "the matter in controversy arise[] under the Constitution, laws, or treaties of the United States." After a

3

hearing on the Tribe's request for a preliminary injunction, the district court concluded that it lacked subject-matter jurisdiction and dismissed the suit as moot.[2]

## II.  DISCUSSION

We review de novo the district court's conclusion that it lacked jurisdiction.  *See Kaw Nation ex rel. McCauley v. Lujan*, 378 F.3d 1139, 1142 (10th Cir. 2004).

The issue before us must be examined in light of a long history of federal law regarding Indian affairs.  "[T]he Constitution grants Congress broad general powers to legislate in respect to Indian tribes, powers that . . . have [been] consistently described as plenary and exclusive."  *United States v. Lara*, 541 U.S. 193, 200 (2004) (internal quotation marks omitted).  In particular, "the policy of leaving Indians free from state jurisdiction and control is deeply rooted in the Nation's history."  *McClanahan v. State Tax Comm'n of Ariz.*, 411 U.S. 164, 168 (1973) (brackets and internal quotation marks omitted).  In *Worcester v. State of Georgia*, 31 U.S. 515 (1832), the Supreme Court considered a challenge to Georgia's attempt to regulate activity on the Cherokee Reservation.  The State sought to punish a federally licensed non-Indian missionary for his refusal to leave the Reservation.  Chief Justice Marshall declared that "[t]he Cherokee nation . . . is a distinct community occupying its own territory, . . . in which the laws of Georgia can have no force," and that "[t]he whole intercourse between the United States

---

[2]  It appears that the district court construed the Tribe's amended complaint as advancing a claim under the federal civil-rights act, 42 U.S.C. § 1983.  The district court dismissed that claim without prejudice, and the Tribe has not challenged this ruling on appeal.  The Tribe made clear in district court, however, that it was not relying exclusively on § 1983.

and this nation, is, by our constitution and laws, vested in the government of the United States." *Id.* at 561. Although the Supreme Court has since "departed from Chief Justice Marshall's view that the laws of a State can have no force within reservation boundaries," *Nevada v. Hicks*, 533 U.S. 353, 361 (2001) (brackets and internal quotation marks omitted), federal supremacy over tribes has remained a constant, *see Michigan v. Bay Mills Indian Cmty.*, 134 S. Ct. 2024, 2030 (2014) ("[T]he tribes are subject to plenary control by Congress."); *cf. United States v. Jicarilla Apache Nation*, 564 U.S. 162, 175 (2011) ("Throughout the history of the Indian trust relationship, we have recognized that the organization and management of the trust is a sovereign function subject to the plenary authority of Congress.").

Thus, federal law regulates a tribe's right to exercise authority over non-Indians. *See Nat'l Farmers Union Ins. Cos. v. Crow Tribe of Indians*, 471 U.S. 845, 851–52 (1985) (on "questions concerning the extent to which Indian tribes have retained the power to regulate the affairs of non-Indians . . . , the governing rule of decision has been provided by federal law."). With respect to tribal-court jurisdiction in particular, "whether a tribal court has adjudicative authority over nonmembers is a federal question." *Plains Commerce Bank v. Long Family Land & Cattle Co.*, 554 U.S. 316, 324 (2008). When parties challenge tribal jurisdiction, "it is federal law on which they rely as a basis for the asserted right of freedom from Tribal Court interference." *Nat'l Farmers Union*, 471 U.S. at 853.

Similarly, the Supreme Court has made clear that state adjudicative authority over Indians for on-reservation conduct is greatly limited by federal law. (The Tribe contends that Mr. Becker's contract claim arose on the reservation.) The leading decision on the matter in the civil context is *Williams v. Lee*, 358 U.S. 217, 217–18, 223 (1959), which held that an Arizona state court could not exercise civil jurisdiction over a suit brought by a non-Indian store operator against a Navajo couple to collect on a debt incurred at a store located on the reservation. To rule otherwise, the Court said, "would undermine the authority of the tribal courts over Reservation affairs and hence would infringe on the right of the Indians to govern themselves." *Id.*

Of particular relevance are decisions under a federal statute—Public Law 280, ch. 505, 67 Stat. 588 (1953) (codified as amended at 18 U.S.C. § 1162; 25 U.S.C. §§ 1321– 1326; 28 U.S.C. § 1360)—that, for most states, grants state-court jurisdiction over litigation arising in Indian country in which an Indian is a party only when certain actions are taken by a state or tribe. When passed in 1953 it "delegated civil and criminal jurisdiction over Indian reservations to certain States [and] provided a means whereby other States could assume jurisdiction over Indian reservations without the consent of the tribe affected." *McClanahan*, 411 U.S. at 177 n.17 (citations omitted). But the Indian Civil Rights Act, passed in 1968, "changed the prior procedure to require the consent of the Indians involved before a State was permitted to assume jurisdiction." *Id.*; *see United States v. Burch*, 169 F.3d 666, 669 (10th Cir. 1999) ("[The statute] was amended in 1968

6

to omit the requirement of affirmative [state] legislative action and to require the consent of the Indian tribe by special election before a state could assume jurisdiction.").

The statute has been strictly enforced. In *Kennerly v. District Court of Ninth Judicial District of Montana*, 400 U.S. 423, 426–29 (1971) (per curiam), the Supreme Court held that Montana courts could not exercise jurisdiction over a civil claim against Indians arising on the Blackfeet reservation—despite tribal legislation granting jurisdiction to the Montana courts—because the grant did not comply with either version of the statute. It did not comply with the initial requirement because there had been no state legislation authorizing jurisdiction over actions on the reservation. And the tribal legislation did not satisfy the later requirement of a special election establishing the consent of Indians within the affected area. Then, in *Fisher v. District Court of Sixteenth Judicial District of Montana, in & for Rosebud County*, 424 U.S. 382, 386–88 (1976) (per curiam), the Court held that Montana courts could not exercise jurisdiction over adoption proceedings involving only Indians residing on the reservation because such an exercise of jurisdiction would infringe on tribal self-government and "[n]o federal statute sanction[ed] this interference."

Thus, it is clear that whether the state court has jurisdiction to hear Mr. Becker's claim is a matter of federal law. The only remaining question is whether the Tribe's suit seeking an injunction to halt the proceedings in state court is an action "arising under" federal law (so that there is jurisdiction under 28 U.S.C. § 1331) or whether "the matter in controversy [in this suit] arises under" federal law (so that there is jurisdiction under

7

28 U.S.C. § 1362). The parties agree that the difference in language in the two statutes is immaterial to the issue before us. We hold that the jurisdictional predicate is satisfied.

The federal courts generally have jurisdiction to enjoin the exercise of state regulatory authority (which includes judicial action) contrary to federal law. As the Supreme Court stated in *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96 n.14 (1983): "A plaintiff who seeks injunctive relief from state regulation, on the ground that such regulation is pre-empted by a federal statute which, by virtue of the Supremacy Clause of the Constitution, must prevail, thus presents a federal question which the federal courts have jurisdiction under 28 U.S.C. § 1331 to resolve."

This equitable jurisdiction under § 1331 has repeatedly been employed to police the boundaries between state and tribal authority. A few days before *Shaw* the Supreme Court upheld a federal-court order enjoining the State of New Mexico from enforcing hunting and fishing laws against non-Indians for acts on the reservation. *See New Mexico v. Mescalero Apache Tribe*, 462 U.S. 324, 329–30 (1983). Two years later, in a mirror image of the case before us, the Court in *National Farmers Union Insurance Cos. v. Crow Tribe of Indians*, 471 U.S. 845, 852–53 (1985), upheld the jurisdiction of a federal court to issue an injunction halting tribal-court proceedings against a non-Indian. The Court first extended the above-quoted statement in *Shaw* to encompass federal common-law claims. *See id.* at 850 (the grant of jurisdiction in § 1331 "will support claims founded upon federal common law as well as those of a statutory origin" (internal quotation marks omitted)). Explaining its holding, the Court then wrote:

8

> The question whether an Indian tribe retains the power to compel a non-Indian property owner to submit to the civil jurisdiction of a tribal court is one that must be answered by reference to federal law and is a "federal question" under § 1331.  Because petitioners contend that federal law has divested the Tribe of this aspect of sovereignty, it is federal law on which they rely as a basis for the asserted right of freedom from Tribal Court interference. *They have, therefore, filed an action "arising under" federal law within the meaning of § 1331.*  The District Court correctly concluded that a federal court may determine under § 1331 whether a tribal court has exceeded the lawful limits of its jurisdiction.

*Id.* at 852–53 (footnote omitted) (emphasis added).

We fail to see how we can distinguish these Supreme Court precedents from the case before us with respect to federal-court jurisdiction.  If a suit to enjoin a tribe from exercising jurisdiction contrary to federal law is an action "arising under" federal law, then so is a suit to enjoin a State from exercising jurisdiction contrary to federal law.  And, indeed, this court has exercised such arising-under jurisdiction over the years.  *See Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1237, 1240 (10th Cir. 2001) (affirming a district-court injunction forbidding Kansas authorities from enforcing state motor-vehicle-registration and titling laws against the plaintiff tribe); *United Keetoowah Band of Cherokee Indians v. State of Okla. ex rel. Moss*, 927 F.2d 1170, 1173 (10th Cir. 1991) ("We are persuaded that an action such as this by a tribe asserting its immunity from the enforcement of state laws is a controversy within § 1362 jurisdiction as a matter arising under the Constitution, treaties or laws of the United States."); *Seneca-Cayuga Tribe of Okla. v. State of Okla. ex rel. Thompson*, 874 F.2d 709, 716–17 (10th Cir. 1989) (affirming preliminary injunction preventing State of Oklahoma from

9

interfering with operation of gaming on tribal land and from proceeding with suit in state court). And more recently, in *Ute Indian Tribe of the Uintah & Ouray Reservation v. Utah*, 790 F.3d 1000, 1007, 1012 (10th Cir. 2015) (Gorsuch, J.), *cert. denied*, *Uintah Cty., Utah v. Ute Indian Tribe of the Uintah & Ouray Reservation*, 136 S. Ct. 1451 (2016), and *Wasatch Cty., Utah v. Ute Indian Tribe of the Uintah & Ouray Reservation*, 136 S. Ct. 1451 (2016), we reversed the district court's denial of a request for a preliminary injunction against a state prosecution and ordered the court to enter the injunction because the State was attempting to exercise criminal jurisdiction against an Indian for conduct on tribal lands. Although that case did not (as ours does) involve civil jurisdiction, no reason has been offered why that should matter. As we have already noted, Public Law 280 covers both criminal and civil jurisdiction.[3]

Mr. Becker argues, however, that our decision in a prior appeal involving this litigation has already resolved that the federal district court lacked jurisdiction. Our decision in *Becker v. Ute Indian Tribe of the Uintah & Ouray Reservation*, 770 F.3d 944 (10th Cir. 2014), concerned Mr. Becker's suit against the Tribe in federal district court to resolve the present contract dispute. He brought state-law claims for breach of contract,

---

[3] Our recent decision in *Hackford v. Utah*, 845 F.3d 1325 (10th Cir. 2017), is not to the contrary. Although we affirmed the district court's denial of a motion filed by a plaintiff claiming to be an Indian seeking a preliminary injunction against a state prosecution, that was because we agreed that "the alleged offenses occurred outside of Indian Country," *id.* at 1326. The outcome was driven by facts different from those before us. And even though we denied relief, we did not order that the federal-court action be dismissed for lack of jurisdiction, thereby indicating that such a suit to enjoin a state-court action for lack of jurisdiction is a matter within the federal district court's jurisdiction, even if the suit turns out to lack merit.

10

breach of the covenant of good faith and fair dealing, and an accounting. He contended that the court had federal-question jurisdiction under 28 U.S.C. § 1331 because the claims raised substantial questions of federal law regarding the validity of the Contract and the Tribe's sovereign immunity. *See id.* at 946. The district court concluded that jurisdiction was not proper because the possibility that the Tribe would raise federal-law defenses, such as sovereign immunity, to the state-law claims could not establish federal-question jurisdiction. *See id.* We agreed and affirmed the dismissal. *See id.* at 948–49. Mr. Becker says that "[n]othing has changed," Becker Br. at 9, as we move from that appeal to this one. We agree that the law has not changed. But this case differs from the earlier appeal in decisive respects.

To be sure, there is some overlap in the issues raised in the two appeals. But there was no question in the prior appeal regarding state-court jurisdiction over the contract dispute between Mr. Becker and the Tribe. In fact, there was no state-court proceeding pending or imminent at the time.

Moreover, our treatment of the sovereign-immunity issue in the prior appeal does not control the issue now before us. We resolved the immunity issue by relying on the Supreme Court decision in *Oklahoma Tax Commission v. Graham*, 489 U.S. 838 (1989) (per curiam), which, in our words, "singled out tribal sovereign immunity as a type of federal defense that does not convert a suit otherwise arising under state law into one which, in the § 1331 sense, arises under federal law." *Becker*, 770 F.3d at 948 (brackets and internal quotation marks omitted). *Graham* involved the removal of a case from state

11

court to federal district court. The State of Oklahoma had sued the Chickasaw Tribe and the manager of a tribal enterprise in state court to collect unpaid cigarette and gaming excise taxes. *See Graham*, 489 U.S. at 839. The Tribe removed the case to federal court, asserting jurisdiction under § 1331; and the district court denied the State's motion to remand the case back to state court. *See id.* This court affirmed, reasoning that even though the complaint in state court did not on its face present a federal claim, the question of tribal sovereign immunity was "inherent within the complaint because of the parties subject to the action." *Id.* at 840 (internal quotation marks omitted). The Supreme Court summarily reversed. It relied on the well-pleaded-complaint rule, which states that "[w]hether a case is one arising under federal law, in the sense of [§ 1331], must be determined from what necessarily appears in the plaintiff's statement of his own claim in the bill or declaration, unaided by anything alleged in anticipation of avoidance of defenses which it is thought the defendant may interpose." *Id.* at 840–41 (brackets, ellipsis, and internal quotation marks in original omitted). "[I]t has long been settled," said the Court, "that the existence of a federal immunity to the claims asserted does not convert a suit otherwise arising under state law into one which, in the statutory sense, arises under federal law." *Id.* at 841.

But there are two significant differences between *Graham* and our case. To begin with, sovereign immunity and a court's lack of subject-matter jurisdiction are different animals. *See, e.g.*, *Blatchford v. Native Village of Noahtak*, 501 U.S. 774, 786 n.4 (1991); *United States v. Park Place Associates, Ltd.*, 563 F.3d 907, 923–24 (9th Cir.

12

1991). The Tribe's complaint asserts that several laws, including Public Law 280, deprived the state court of subject-matter jurisdiction regardless of any waiver of sovereign immunity. And ordinarily subject-matter jurisdiction is not waivable or can be waived only through specified procedures. For example, Public Law 280 requires certain prelitigation action by the state or the tribe for there to be state-court jurisdiction. *See* 25 U.S.C. § 1322(a); *Kennerly*, 407 U.S. at 425, 427–29; William C. Canby, Jr., American Indian Law in a Nutshell 211 (6th ed. 2015) (Under *Kennerly*, "the parties cannot confer [subject-matter] jurisdiction on the state by consent."). Tribal sovereign immunity, in contrast, is a waivable defense. *See Graham*, 489 U.S. at 841 (tribal immunity is a defense); *Kiowa Tribe of Okla. v. Mfg. Techs., Inc.*, 523 U.S. 751, 754, 760 (1998) (tribe can waive immunity). And it can be raised in any court with jurisdiction to consider the tribe's dispute. *See Bay Mills*, 134 S. Ct. at 2028 ("Indian tribes have immunity even when a suit arises from off-reservation commercial activity."). Thus, Public Law 280 might be invoked when tribal sovereign immunity is not at issue (because the defense has been waived or the Indian party—say an individual member of a tribe—is not entitled to claim tribal immunity). *See Kennerly*, 400 U.S. at 425, 27–29 (state court lacked jurisdiction despite an unambiguous consent from the tribe, because the consent did not comply with Public Law 280). And sometimes tribal sovereign immunity can be invoked when Public Law 280 is not at issue (because, say, the dispute did not arise in Indian country, *see Bay Mills*, 134 S. Ct. at 2028). *See* Cohen § 7.05[1][b], at 640 n.27 ("The sovereign immunity inquiry is solely concerned with whether the tribe itself is being sued

13

and whether the tribe or Congress has explicitly waived immunity, and is unrelated to factors such as tribal, federal, or state interests relevant to the state jurisdiction question."). [4]

More importantly, *Graham* and Mr. Becker's appeal considered suits seeking declarations that federal law did not override state law, whereas the Tribe contends that state law must yield to federal law. "[F]or reasons involving perhaps more history than logic," *Franchise Tax Board v. Construction Laborers*, 463 U.S. 1, 4 (1983), whether a case arises under federal law can depend on which party to a dispute raises the federal issue. In *Franchise Tax* the state tax board brought an action against the defendant in state court for a declaratory judgment that the defendant had to honor all its future levies because federal law (ERISA) did not preempt state law; preemption was the only dispute between the parties. *See id.* at 14. The defendant removed the case to federal court. The

---

[4] Mr. Becker does not dispute that the Public Law 280 requirements for state-court jurisdiction have not been satisfied in Utah. Utah did not adopt the required legislation before the 1968 amendment to the law and nothing in the record indicates that the Tribe has ever given consent to state-court jurisdiction. *See United States v. Felter*, 752 F.2d 1505, 1508 n.7 (10th Cir. 1985) ("Although Utah since has indicated its willingness to assume this jurisdiction, no Indian tribe has accepted its offer."); Cohen's Handbook of Federal Indian Law (Cohen) § 6.04[3][a], at 537–38 n.47 (Nell Jessup Newton ed., 2012) ("Utah has a post-1968 statute accepting jurisdiction when tribes consent . . . . No tribe has consented."). Nevertheless, there may be a question whether Public Law 280 applies to suits against tribes, as opposed to individual Indians. We need not resolve that issue or the applicability of the other laws relied on by the Tribe as depriving the state court of subject-matter jurisdiction. The point is only that the federal district court had jurisdiction to decide the issue of state-court subject-matter jurisdiction. How to decide that question is left for the district court to decide in the first instance on remand.

14

Supreme Court ruled that the suit did not "arise under" federal law so removal had been improper. *See id.* at 20. Yet the Court indicated that there would have been jurisdiction if the defendant had gone to federal court to enjoin the board's imposition of levies on the ground that the levies were preempted by ERISA: "If [the defendant] could have sought an injunction under ERISA against application to it of state regulations that require acts inconsistent with ERISA, does a declaratory judgment suit by the State 'arise under' federal law? We think not." *Id.* (footnote and paragraph break omitted).

The point was clearly resolved in another decision by the Court that day, the *Shaw* decision that we have already quoted. In that case the Court stated, "A plaintiff who seeks injunctive relief from state regulation, on the ground that such regulation is pre-empted by a federal statute which, by virtue of the Supremacy Clause of the Constitution, must prevail, thus presents a federal question which the federal courts have jurisdiction under 28 U.S.C. § 1331 to resolve." *Shaw*, 463 U.S. at 96 n.14. The Court distinguished *Franchise Tax*: "The Court's decision today in [*Franchise Tax*] does not call into question the lower courts' jurisdiction to decide these cases. [*Franchise Tax*] was an action seeking a declaration that state laws were *not* pre-empted by ERISA. Here, in contrast, companies subject to ERISA regulation seek injunctions against enforcement of state laws they claim *are* pre-empted by ERISA, as well as declarations that those laws are pre-empted." *Id*. As stated by a leading treatise, "[T]he best explanation of the results in these cases may be that a party claiming that federal law controls and that state law has been preempted . . . can institute an action in federal court even though a suit by

15

the party who maintains state law still is valid, as in Franchise Tax Board, can neither be brought in federal court nor removed from state court to federal court." 10B Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, Richard L. Marcus, A. Benjamin Spencer & Adam N. Steinman, Federal Practice and Procedure § 2767 (4th ed. April 2017 Update).

That is the very distinction between Mr. Becker's suit in our prior appeal and the Tribe's suit now before us. Mr. Becker sought federal jurisdiction on the ground that resolution of the dispute would require the court to decide the validity of several federal defenses that he believed the Tribe would raise. In effect, he was seeking, among other things, a declaration that his state-law claims *were not* preempted by federal law. His claim was similar in this respect to the *Franchise Tax* state-law claim that the defendants had tried to remove to federal court. The Tribe, in contrast, is seeking injunctive and declaratory relief against state regulation (the state-court proceeding) that it claims *is* preempted by federal law. Our precedents support distinguishing *Graham* in the context here. *See Sac & Fox Nation v. Hanson*, 47 F.3d 1061, 1062, 1063–65 (10th Cir. 1995) (affirming permanent injunction preventing state-court proceeding against Tribe as barred by sovereign immunity); *Kiowa Indian Tribe of Okla. v. Hoover*, 150 F.3d 1163, 1165, 1171–72 (10th Cir. 1998) (court could grant injunction against pursuit of contract claims infringing tribal sovereign immunity); *see also Aroostook Band of Micmacs v. Ryan*, 404 F.3d 48, 69 (1st Cir. 2005) *overruled on other grounds by Narragansett Indian Tribe v. Rhode Island*, 449 F.3d 16, 24–25 (1st Cir. 2006) (distinguishing *Graham* and holding

16

that a tribe's "claim of tribal sovereign immunity presents a 'colorable' claim of a federal cause of action").

Thus, the controlling precedent is not *Graham* but *National Farmers*, which, as previously noted, was the mirror image of this case. Rather than, as in this case, addressing an Indian challenge under federal law to the jurisdiction of a state court, *National Farmers* addressed a challenge by non-Indians that federal law barred a tribal court from hearing a suit against them. But that opinion's reasoning is directly applicable here: "Because petitioners contend that federal law has divested the Tribe of this aspect of sovereignty, it is federal law on which they rely as a basis for the asserted right of freedom from Tribal Court interference. *They have, therefore, filed an action 'arising under' federal law within the meaning of § 1331.*" *Nat'l Farmers Union*, 471 U.S. at 852–53 (emphasis added). Here, the Tribe likewise relies on federal law "as a basis for the asserted right of freedom from [state-court] interference." *Id.*

Finally, we recognize that there may be limitations on the district court's authority to enjoin ongoing state proceedings.[5] But the defendants have not raised any such limitation on appeal, and such issues can be addressed by the district court in the first instance.[6]

---

[5] We note, however, that we have said: "It is possible that section 1362 [federal-question jurisdiction in cases brought by Indian Tribes] authorizes federal courts to enter injunctions against state proceedings." *Sac & Fox Nation,* 47 F.3d at 1063 n.1.

[6] We can readily dispose of Mr. Becker's remaining arguments. First, he contends that the doctrine of complete preemption does not create § 1331 jurisdiction here. But

17

## III. CONCLUSION

We **REVERSE** and **REMAND** to the district court for further proceedings consistent with this opinion. In particular, the district court should address in the first instance whether the Tribe's claims for declaratory relief fall within its supplemental jurisdiction under 28 U.S.C. § 1367.

---

because we do not rely on complete preemption as a basis for jurisdiction in this case, we need not address the argument. Second, he contended at oral argument that, based on notions of comity and the Seventh Circuit's decision in *Stifel, Nicolaus & Co., Inc. v. Lac du Flambeau Band of Lake Superior Chippewa Indians*, 807 F.3d 184 (7th Cir. 2015), federal courts should defer to a state court's determination of its own jurisdiction. That argument, however, should be left to the federal district court to resolve on remand. The issue does not go to the federal court's jurisdiction. *See Smith v. Moffett*, 947 F.2d 442, 445 (10th Cir. 1991) ("concerns of comity do not present a jurisdictional bar").

For the same reason, we leave to the federal district court to address in the first instance the other arguments made by Judge Lawrence: judicial immunity, the effect of a tribal waiver of sovereign immunity, and the application of the tribal-exhaustion rule in state courts. Because the district court concluded that it lacked subject-matter jurisdiction, it did not consider these arguments. *See Trans–Western Petroleum, Inc. v. United States Gypsum Co.*, 830 F.3d 1171, 1175 (10th Cir. 2016) ("As a general rule, a federal appellate court does not consider an issue not passed upon below." (internal quotation marks omitted)).

18