FILED
United States Court of Appeals
Tenth Circuit

September 10, 2020

Christopher M. Wolpert
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

RICHARD DOUGLAS HACKFORD,

    Plaintiff - Appellant,

v.

THE STATE OF UTAH; GARY
HERBERT, in his capacity as Governor of
Utah; SEAN D. REYES, in his capacity as
Attorney General of Utah; UINTAH
COUNTY; G. MARK THOMAS, in his
capacity as County Attorney for Uintah
County; LOREN W. ANDERSON, in his
capacity as Deputy County Attorney
Uintah County,

    Defendants - Appellees.

No. 19-4093
(D.C. No. 2:18-CV-00631-CW)
(D. Utah)

_____

**ORDER AND JUDGMENT***
_____

Before **PHILLIPS**, **BALDOCK**, and **CARSON**, Circuit Judges.
_____

    This is appellant Richard Douglas Hackford's second time before us,

challenging a state-law speeding ticket on federal jurisdictional grounds. Hackford

claims that his Native American ancestry and the location of his offense (on an

---

    * After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
submitted without oral argument. This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel. It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

Indian reservation) combine to shield him from anything but federal prosecution for his traffic infraction.

The district court rejected Hackford's interpretation of federal criminal jurisdiction and entered judgment against him. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I.    STATUTORY BACKGROUND

Understanding anything else in this case first requires understanding a hard-to-find federal statute sometimes known as the Ute Partition Act, Pub. L. No. 83-671, 68 Stat. 868–78 (1954) ("UPA").[1] Congress passed the UPA in 1954 to

> to provide for the partition and distribution of the assets of the Ute Indian Tribe of the Uintah and Ouray Reservation in Utah between the mixed-blood and full-blood members thereof; [and] for the termination of Federal supervision over the trust, and restricted property, of the mixed-blood members . . . .

*Id*. § 1 (25 U.S.C. § 677).

To achieve this goal, Congress directed the tribe to "submit to the Secretary [of the Interior] a proposed roll of the full-blood members of the tribe, and a proposed roll of the mixed-blood members of the tribe," after which the Secretary would publish those rolls in the Federal Register. *Id*. § 8 (25 U.S.C. § 677g). Upon

---

[1] The UPA was previously codified in the United States Code, but the most recent official Code (*i.e.*, the bound volume from the Government Printing Office) designates these sections as "omitted . . . as being of special and not general application." 25 U.S.C. §§ 677–677aa (2018). Westlaw and Lexis now list these sections as "Omitted," but without the GPO's explanation. The UPA's full text remains in the Statutes at Large, however, so we will cite to the section numbers provided there, followed by a parenthetical cite to the previous U.S. Code codification, *e.g.*, UPA § 2 (25 U.S.C. § 677a).

2

receiving a distribution of tribal assets, "Federal supervision [over a mixed-blood] member and his property [would] thereby be terminated." *Id*. § 16(a) (25 U.S.C. § 677o(a)). And, upon fulfilling certain other requirements, Congress directed "the Secretary [to] publish in the Federal Register a proclamation declaring that the Federal trust relationship to such individual is terminated." *Id*. § 23 (25 U.S.C. § 677v). "Thereafter," the statute continues,

> such [mixed-blood] individual shall not be entitled to any of the services performed for Indians because of his status as an Indian. All statutes of the United States which affect Indians because of their status as Indians shall no longer be applicable to such member over which supervision has been terminated, and the laws of the several States shall apply to such member in the same manner as they apply to other citizens within their jurisdiction.

*Id*.

## II. FACTUAL BACKGROUND & PROCEDURAL HISTORY

The matters in question here span two lawsuits. Neither proceeded beyond the pleading phase. For present purposes, we will accept Hackford's well-pleaded, non-conclusory allegations from both lawsuits as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

### A. Hackford

Hackford is "a Native American, [a] descendant of the aboriginal Utah Indians also known as the 'Uinta Band.'" Aplee. Supp. App. at 190. He is listed on the Federal Register as a "mixed-blood" Ute over whom federal supervision has terminated. 21 Fed. Reg. 2208, 2209 (Apr. 5, 1956); 26 Fed. Reg. 8042, 8042

3

(Aug. 26, 1961); *see also* Aplee. Supp. App. at 190. He "resides on tribal land, within the boundaries of the Uintah and Ouray Indian Reservation, where he has lived his entire life." Aplee. Supp. App. at 192.

### B.     First Lawsuit

In December 2013, a Utah Highway Patrol trooper stopped Hackford for "alleged traffic offenses." *Id*. at 6. Hackford told the trooper that he was a Native American and that they were on the Uintah and Ouray reservation—obviously intending to convey that Utah had no jurisdiction over him. *Cf. Cheyenne-Arapaho Tribes of Okla. v. Oklahoma*, 618 F.2d 665, 668 (10th Cir. 1980) ("States have no authority over Indians in Indian Country unless it is expressly conferred by Congress."). The trooper released Hackford without citation, but Hackford was served the following month with a summons to appear in Wasatch County Justice Court to answer for the "alleged traffic offenses for which he was stopped." Aplee. Supp. App. at 6.

While that prosecution was pending, Hackford sued the State of Utah (State) and Wasatch County in federal district court. He asked for a declaratory judgment that his prosecution violated federal law and tribal sovereignty, and for an injunction against further prosecution in State courts. The district court eventually dismissed the suit, holding:

- Hackford had committed his alleged traffic offenses in a place that had not been part of the Uintah and Ouray reservation since 1905; and,

4

- even if the site of the traffic offenses was within the reservation, Hackford, "despite his claim to be of Indian heritage, is not an Indian so as to be beyond the criminal jurisdiction of the State and/or Wasatch County."

*Hackford v. Utah*, Nos. 2:75-cv-00408, 2:13-CV-00276, 2:13-cv-1070, 2:14-cv-0644, 2015 WL 4717639, at *1–2 (D. Utah Aug. 7, 2015).

Hackford appealed and this court affirmed, but only on the finding that Hackford had committed his alleged offenses off-reservation. *Hackford v. Utah*, 845 F.3d 1325, 1327–30 (10th Cir. 2017). We did "not reach the issue of Mr. Hackford's Indian status." *Id*. at 1326.

## C. Second (Current) Lawsuit

Sometime later (Hackford does not provide the date), Hackford was stopped for speeding in Ballard, Uintah County, Utah. In the prosecution that followed, Uintah County "stipulated that the alleged offense occurred in Indian Country." Aplee. Supp. App. at 190.

With that prosecution still pending, Hackford sued the State and Uintah County in federal district court, again seeking declaratory and injunctive relief "to prohibit and enjoin the Defendants' criminal prosecution of the Plaintiff as a matter of federal law." *Id*. at 188. The state trial court then stayed the prosecution pending the outcome of the federal lawsuit.[2]

---

[2] In this light, the district court found no potential need for abstention under *Younger v. Harris*, 401 U.S. 37 (1971), because a state court's choice to "stay[] its

Given the Indian Country stipulation, the major question for this second lawsuit was whether Hackford is an Indian for purposes of federal criminal jurisdiction. The State and Uintah County each moved to dismiss, arguing that the district court's dismissal order in the first lawsuit established Hackford's non-Indian status, meaning issue preclusion (collateral estoppel) now bars relitigation of that question. They also argued that, regardless of issue preclusion, Hackford is not an Indian in the relevant sense.

The district court held that issue preclusion was inappropriate at the motion-to-dismiss phase but agreed with the underlying argument regarding Hackford's Indian status. It reasoned that Hackford is listed as a mixed-blood Ute in the Federal Register, so his "claim that he is immune from state prosecution because he is an Indian is expressly precluded by the Ute Partition Act and is therefore meritless." *Id.* at 314. The district court accordingly granted defendants' motions to dismiss. Hackford now appeals that ruling.

## III.  ANALYSIS

"Where, as here, a complaint is dismissed for failure to state a claim, our review is de novo." *Janke v. Price*, 43 F.3d 1390, 1391 (10th Cir. 1994).

### A.  Issue Preclusion

Uintah County urges this court to affirm on the alternate ground that issue

---

own proceedings in favor of federal resolution of the issues" eliminates an "essential predicate to *Younger* abstention," namely, "the presence of an *ongoing* state prosecution," *Sw. Air Ambulance, Inc. v. City of Las Cruces*, 268 F.3d 1162, 1178 (10th Cir. 2001).

preclusion bars Hackford from relitigating the finding in his first lawsuit that he is not an Indian for purposes of federal criminal jurisdiction. But the district court in the first lawsuit made two independent findings: (1) Hackford's traffic offense occurred outside of Indian Country, and (2) Hackford is not an Indian in the relevant sense. Each of those findings would have been enough to sustain the judgment, and this court affirmed only the first one.

Issue preclusion does not apply unless the issue previously decided was "essential to the judgment." *Stan Lee Media, Inc. v. Walt Disney Co.*, 774 F.3d 1292, 1297 (10th Cir. 2014) (internal quotation marks omitted). "Where the prior court gave alternative rulings on a given issue, and where each is sufficient to support the result, neither is typically given issue-preclusive effect because it cannot be said that either issue was actually and necessarily decided." *Id.* at 1297 n.1 (internal quotation marks omitted). Uintah County does not explain why this case presents something other than the typical scenario. We accordingly decline to affirm the district court on the alternative basis of issue preclusion.

B.     **Effect of the UPA**

As below, the major question on appeal is the UPA's effect on Hackford. To repeat, once the Secretary of the Interior made certain publications in the Federal Register (which he did in 1956 and 1961), an individual identified in the Federal Register as a "mixed-blood" Ute was no longer "entitled to any of the services performed for Indians because of his status as an Indian," and no longer benefited from "statutes of the United States which affect Indians because of their status as

7

Indians." UPA § 23 (25 U.S.C. § 677v). Finally, and most relevant here, the UPA made "the laws of the several States [applicable] to such [a person identified in the Federal Register as 'mixed-blood'] in the same manner as they apply to other citizens within their jurisdiction." *Id*.

Hackford has no clear argument that the statutory language does not mean precisely what it says. He instead mostly ignores the statute and insists he can prove his Indian status under various tests applied in other contexts. On this, however, the State's rejoinder is apt: "his entire legal argument misses the point—it doesn't matter whether he [can prove Indian status under another test]," State Resp. Br. at 16, because Congress has already declared that those listed as mixed-blood Utes on the Federal Register are subject to "the laws of the several States . . . in the same manner as [those laws] apply to other citizens within [the States'] jurisdiction," UPA § 23 (25 U.S.C. § 677v). Hackford is listed as a mixed-blood Ute on the Federal Register, so the State may apply its laws to him, such as its traffic laws, in the same manner as it may to any other citizen. The district court correctly granted defendants' motion to dismiss on this basis. *Cf. Gardner v. United States*, No. 93-4102, 1994 WL 170780, at *3 (10th Cir. May 5, 1994) ("Where a termination act such as [the UPA] ended the federal trust relationship with an Indian and exposed him to state law, he is subject to state criminal jurisdiction, unless his victim was an Indian.").

## C. Equal Protection

For the first time on appeal, Hackford argues that the UPA violates equal protection principles. "To urge reversal of an issue that was forfeited in district

8

court, an appellant must argue plain error." *Rumsey Land Co. v. Resource Land Holdings, LLC (In re Rumsey Land Co.)*, 944 F.3d 1259, 1271 (10th Cir. 2019). "[T]he failure to do so—the failure to argue for plain error and its application on appeal—surely marks the end of the road for an argument for reversal not first presented to the district court." *Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1131 (10th Cir. 2011).

Hackford neither acknowledges that he raises this issue for the first time on appeal, nor argues for plain error review. Accordingly, we need not and do not reach the issue.

## IV. CONCLUSION

We affirm the judgment of the district court.

Entered for the Court


Gregory A. Phillips
Circuit Judge